MISS QUATA WOODS, CHAIRMAN BOARD OF TRUSTEES,
TEACHERS RETIREMENT SYSTEM, ET AL V.
JUSTIN AUBREY REILLY.

No. A-1787. Decided March 2, 1949.
Rehearing overruled March 30, 1949.
(218 S. W., 2d Series, 437.)

*Price Daniel,* Attorney General, *Fagan Dickson, Chester E. Ollison,* Assistants Attorney General, and *Gaynor Kendall,* Special Assistant Attorney General, for petitioner's Woods and other trustees.

Since Miss Reilly died within thirty days after "retirement" and her optional retirement selection (of a beneficiary which is the basis of this case) respondent's claim was ineffective under the express terms of the Teachers' Retirement Act. Respondent was not within the class of persons to whom a retirement allowance can be paid. Stanford v. Butler, 142 Texas 692, 181 S. W. (2d) 269; Moorman v. Terrell, 109 Texas 173, 202 S. W. 727; Franklin Fire Ins. Co. v. Hall, 112 Texas 332, 247 S. W. 822.

*George E. Shelley* and *Tyler & Tyler,* all of Austin, for respondent.

Miss Reilly could and did retire as a school teacher on July 1, 1939, within the meaning of the 1937 teacher retirement act, and the 1941 amendment did not render ineffectual all retirements prior to September 1, 1941. City of Dallas v. Hoskins, 193 S. W. (2d) 533; McGuire v. City of Dallas, 141 Texas 170, 170 S. W. (2d) 722; 32 Texas Jur., 772; 40 Am. Jur., 973.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This case presents questions as to the proper construction and constitutionality of the 1937 Act establishing a Teachers' Retirement System (Acts of 45th Legislature, Regular Session, p. 1178, ch. 470), as amended in 1941 (Acts 47th Legislature, p.

610, ch. 376). This legislation was further amended in 1943 and 1947 (Acts 1943, 48th Legislature, p. 676, ch. 377, and Acts 1947, 50th Legislature, p. 441, ch. 248), and is contained in Vernon's Texas Statutes 1948 as article 2922-1. The authority for its enactment is found in Section 48(a) of Article III of the Texas Constitution, hereinafter quoted, which was submitted by the 44th Legislature in 1935 and adopted by the people in 1936.

The Act in general set up a system whereby teachers of the public schools, and certain other officials therein, might be retired for length of service or disability, and provided for retirement or disability benefits in the form of annuities payable in part out of sums contributed from the salaries of the teacher-members of the System, and the balance out of funds contributed by the State of Texas equal to the teacher-member's accumulated contributions. All funds thus accumulated, except those sufficient to meet immediate payments that might become due each year, were to be invested by the State Board of Trustees, created by the Act, in government bonds, and the net income to be reinvested from time to time in like manner.

The Act further provides for retirement of teacher-members who have attained the proper age and who have completed the required number of years of creditable service. Upon retirement the member is entitled to receive a retirement allowance in the form of an annuity which shall be the actuarial equivalent of the sums of his savings and the State reserves due him as a condition of his creditable service and membership in the Retirement System. His retirement allowance is to be derived from the accumulated contributions credited to his account in the Teacher Saving Fund at the time of retirement and from certain credits allowed for service prior to the establishment of the Retirement System.

The Act also provides that should a member cease to be a teacher except by death or retirement, he shall be paid the full amount of his accumulated contributions, and if he should die before retirement, the amount of his accumulated contributions standing to the credit of his individual account shall be paid as provided by the laws of descent and distribution unless he has directed the account to be paid otherwise.

Under subsection 7 of section 5 the members of the Retirement System are given optional allowances for service retirement, which permits the retiring member to receive all of membership annuity payable throughout the remainder of his life, or he may elect to receive a reduced membership annuity payable

throughout life with the remainder to be paid as provided in three alternative options to some person that he shall nominate to receive it. Those provisions and the three options are as follows:

"7. Optional Allowances for Service Retirement.

"With the provision that no optional selection shall be effective in case a beneficiary dies within thirty (30) days after retirement, and that such a beneficiary shall be considered as an active member at the time of death, until the first payment on account of any service benefit becomes normally due, any member may elect to receive his membership annuity in an annuity payable throughout life, or he may elect to receive the actuarial equivalent at that time, of his membership annuity in a reduced membership annuity payable throughout life with the provision that:

"Option (1). Upon his death, his reduced membership annuity shall be continued throughout the life of, and paid to, such person as he shall nominate by written designation duly acknowledged and filed with the State Board of Trustees at the time of his retirement; or

"Option (2). Upon his death, one-half of his reduced membership annuity shall be continued through the life of, and paid to, such person as he shall nominate by written designation duly acknowledged and filed with the State Board of Retirement at the time of his retirement; or

"Option (3). Some other benefit or benefits shall be paid either to the member, or to such person or persons as he shall nominate, provided such other benefit or benefits, together with the reduced membership annuity, shall be certified by the actuary to be of equivalent actuarial value to his membership annuity, and approved by the State Board of Trustees.

"With the provision that no optional selection shall be effective in case a beneficiary dies within thirty (30) days after retirement and that such a beneficiary shall be considered as an active member at the time of death, until the first payment on account of any service benefit becomes normally due, any member may elect to receive his prior service annuity in an annuity payable throughout life or he may elect to receive the actuarial equivalent at that time, of his prior-service annuity in a reduced prior-service annuity payable as provided in Option (1), (2), or (3) above, provided that all payments under all prior-service annuities are subject to adjustment by the State Board of Trustees as provided in Section 5, Subsection 2,

Paragraph (b) of this Act; provided further, that the same option must be selected by a member for the payment of his prior-service annuity as is selected by the member for the payment of his membership service annuity."

The original Act of 1937 defined "Retirement" as follows: " 'Retirement' shall mean withdrawal from active service with a retirement allowance granted under the provisions of this Act." In the 1941 amendment, which became effective May 26, 1941, that provision was carried forward in the same language except that the word "active" was omitted, which omission is not here material. Therefore, under both the original Act and the 1941 amendment, in order for the teacher to change his status from that of an "active member" to that of a "retired member" he must not only withdraw from service, but also must have been granted a "retirement allowance" under the provisions of the Act. Moreover, under subsection 7 of section 5, of both the original Act and the amendment, it is provided that no optional selection shall be effective in case a beneficiary dies within thirty days after retirement, and that such a beneficiary shall be considered as an active member at the time of death, until the first payment on account of any service benefit becomes normally due.

■ While the scheme provided by the Act was theoretically complete in 1937, and the administrative body of the System began to function promptly and collect salary contributions from teachers, the money which the Act contemplated to be paid by the State toward the retirement benefits, and which was, of course, necessary for the payment of any retirement benefits, was not appropriated by the Legislature until 1941 (Acts 47th Legislature, pp. 269, 337, ch. 184, Art. XX, Sec. 2; Vernon's Annotated Civil Statutes 1948, Art. 7083). The System was therefore not operative as such until September 1, 1941, the effective date of the appropriation or allocation.

Under the 1941 amendment it was for the first time provided that no retirement should be effective prior to August 31, 1941.

Miss Margaret Teresa Reilly taught in the Austin Public Schools for about fifty two years, from 1887 until her resignation effective July 1, 1939. Upon the organization of the Teachers' Retirement System she duly established her membership in the System. She attained the age of seventy years on September 12, 1937, but with leave of her employer, as provided in the Act, she remained in service until July 1, 1939.

On April 14, 1938, Miss Reilly filed with the Teachers' Retirement System her record of prior service and designated her brother, Joseph A. Reilly, as the beneficiary to whom her accumulated contributions in the Teacher Saving Fund of the Teacher Retirement System should be paid in the event of her death before retirement. On June 23, 1939, upon the death of her brother, she designated her nephew, Justin Aubrey Reilly, respondent herein, as her beneficiary to receive her accumulated contributions in the event of her death before retirement. On June 10, 1949, she wrote the System, and for the first time indicated her desire to retire as of July 1, 1939, and inquired if she would be entitled to the benefits of the System provided the Legislature later made appropriations therefor. Thereupon she was advised by the System that if she then applied for retirement the benefits would begin as soon as the State provided the State funds enabling the System to begin the benefits, but that no benefits could be paid until the State money had been received. By letter of June 16, 1939, she again indicated to the System her desire to retire, and was again advised that the benefits could not begin until the State money had been received, but that her letter would serve as evidence that she did apply for retirement. On June 28, 1939, Miss Reilly wrote the System that she was hopeful the Legislature would provide means of financing the System and stated that "I do not want to be cut off from the benefits of the system when they *are* active."

No further communication was made between Miss Reilly and the System until July 1, 1941. In the meantime the Legislature had enacted House Bill No. 8 making provision for contributions of the System beginning September 1, 1941. Prior to that date no funds were available for the payment of retirement benefits save and except the funds accumulated from the teach-members which, under the Act, were inoperative until matched by State funds.

On July 1, 1941, a form letter from the Assistant Director and Actuary of the System was addressed to Miss Reilly acknowledging receipt of her desire to apply for retirement and enclosing forms and instructions therefor. Under date of August 19, 1941, Miss Reilly filled out and executed her application for a service retirement allowance, and for the first time selected, or attempted to select, Option (1) under subsection 7 of section 5 under the original Act and its 1941 amendment, and nominated the respondent as her optional beneficiary, who was to receive her accumulated contributions in the event of her

death before retirement, or, by the terms of the Act, if she did not die within thirty days after the effective date of retirement, she was to receive a reduced allowance for the remainder of her life and upon her death to be continued throughout the life of her named beneficiary.

However, Miss Reilly died on September 3, 1941, which was within thirty days from the filing of the application in which she sought to adopt the reduced membership annuity under the option mentioned, and also before any payment for service benefits became "normally due."

This suit is a mandamus action brought in the district court by the respondent here, Justin Aubrey Reilly, as the designated beneficiary of the annuity rights of his aunt, Miss Margaret Teresa Reilly, who was eligible to retire under the Act. The purpose of the suit is to compel Miss Quata Woods, Chairman, and other members of the Board of Trustees of the System, who are petitioners here, to pay respondent, who is not and has never been a teacher-member of the System, the annuities accumulated to the credit of his aunt by reason of his having been designated by her as her "nominee" or beneficiary to receive the same, under Opton (1) of subsection 7 of section 5 of the original Act and its 1941 amendment. The suit is defended upon two grounds: first, that the writ should be denied because Miss Reilly died within thirty days after making her optional selection and thus had not "retired" within the meaning of the Act; and, secondly, that respondent is not within the class of persons to whom a retirement allowance is permitted under the provisions of Section 48a of Article III of the Constitution of Texas, and to the extent the Act assumes to allow payments to persons who are not members of the System, it is invalid.

The cause was tried without a jury upon an agreed statement of facts. The trial court entered judgment that the writ of mandamus issue, which was affirmed by the Court of Civil Appeals. 211 S. W. (2d) 591. The latter court held that Miss Reilly "retired" within the meaning of the Act when she resigned her position as teacher in 1939, and also held that the optional settlement provisions of the Act are constitutional.

■ Although we agree with the Court of Civil Appeals that the Act is not unconstitutional in the respects mentioned, we cannot agree that Miss Reilly retired within the meaning of the

Act. Under the definition of "Retirement", above noted, she must not only have withdrawn from service, but also must have been granted a retirement allowance under the provisions of the Act. Though she had withdrawn from service in 1939 it was not until August 19, 1941, that she attempted to select the optional settlement and designated August 31, 1941, as the effective date of her retirement. She died on September 3, 1941, which was less than thirty days from either the date of the application or the date designated for retirement. Prior to the time of her death no retirement allowance had been granted and no payment thereon had become "normally due". Thus it seems obvious that she had not retired within the meaning of the Act, but was an "active member" at the time of her death. Consequently, under subsection 6 of section 5 of the Act, only the amount of the "accumulated contributions standing to the credit" of her "individual account" should be paid to her beneficiary.

■ In so far as this case is concerned it is immaterial that the 1941 amendment provided that no retirement shall be effective prior to August 31, 1941. As we view the matter, the teacher-member had not retired under the original Act and no rights were vested prior to the 1941 amendment which were affected in any manner by the amendment. But if any rights had accrued to the teacher they would have been predicated upon the anticipated continuance of existing laws which this court has held to be subordinate to the right of the Legislature to entirely abolish a pension system or diminish or change the accrued benefits thereunder. City of Dallas v. Trammell, 129 Texas 150, 101 S. W. (2d) 1009. In this connection, the Legislature, in the original Act, which was unchanged in the amendment, reserved the right to "amend any section, paragraph or any and all provisions of this Act as it may from time to time deem necessary." It follows, therefore, that if any tentative rights had accrued to Miss Reilly prior to the 1941 amendment they would have been modified by the provisions of the amendment, which clearly specified that no retirement should become effective prior to August 31, 1941. The conclusion is thus inescapable that the teacher was an active member at the time of her death and no benefits are due the respondent except the accumulated contributions standing to the credit of the individual account of Miss Reilly at the time of her death.

■ Due to the importance of the question, and because the petitioners have challenged the constitutionality of that portion of the Act permitting optional payments to beneficiaries who

are not teachers, we deem it advisable to express our views on this aspect of the case.

Section 48a of Article III of the Constitution, with certain portions italicised for emphasis, reads as follows:

"In addition to the powers given to the Legislature, under Section 48 of Article 3, it shall have the right to levy taxes to provide a Retirement Fund for persons employed in public schools, colleges and universities, supported wholly or partly by the state; provided that the amount contributed by the State to such Retirement Fund shall equal the amount paid for the same purpose from the income of each such person, and shall not exceed at any time five per centum of the compensation paid to each such person by the State, and/or school districts, and shall in no one year exceed the sum of One Hundred Eighty ($180.00) Dollars for any such person; *provided no person shall be eligible for a pension under this Amendment who has not taught twenty years in the State of Texas, but shall be entitled to a refund of the moneys paid into the fund.*

"All funds provided from the compensation of said persons or by the State of Texas, for such Retirement Fund, as are received by the Treasury of the State of Texas, shall be invested in bonds of the United States, the State of Texas, or counties or cities of this State, or in bonds issued by any agency of the United States Government, the payment of the principal of and interest on which is guaranteed by the United States; provided that a sufficient amount of said funds shall be kept on hand to meet the immediate payment of the amounts that may become due each year under such retirement plan as may be provided by law; *and provided that the recipients of such retirement fund shall not be eligible for any other pension retirement funds or direct aid from the State of Texas, unless such retirement fund, contributed by the State, is released to the State of Texas as a condition to receiving such other pension aid.*" (Emphasis added.)

At the outset it should be stated that the plain intent of the constitutional amendment, and the Act giving it life, was to provide security for teachers and create an incentive to encourage qualified persons to become and remain teachers in the Public Schools of Texas. That being in the public interest, even the State's part of the program is not founded strictly upon a gratuity or donation. The teacher's share in the program is obviously not to be so considered, since, to be eligible for the benefits, he must contribute to the fund throughout his years

of active service. Under such circumstances, the Act should be liberally construed in order to effectuate the whole purpose of the plan.

The petitioners contend that the Act is unconstitutional in so far as it provides optional allowances whereby the member may accept a reduced membership annuity payable throughout retired life with the option that others may be designated to receive the accrued and unpaid benefits to the credit of the member at the time of his death. That contention is predicated upon the above underscored portions of Section 48(a) of Article III of the Constitution which authorized the creation of the Teachers Retirement System. The underscored portions provide, in substance, that no person shall be eligible for a pension who has not taught twenty years in the State of Texas, and that the recipients of such retirement fund shall not be eligible for any other pension unless such retirement fund, contributed by the State, is released to the State as a condition to receiving such other pension aid. It is the theory of petitioners that those constitutional provisions render illegal the statutory provisions of subsection 7 of section 5 providing optional allowances for service retirement because those options would permit the enjoyment of a pension by one who has not taught twenty years. It is also urged that the statute is unconstitutional because it might permit simultaneous enjoyment by the same individual of the State's contributions "in respect of more than one pension."

In so far as the latter theory is concerned, the constitutional provision in question simply prohibits any person from receiving any other pension from the State in addition to the benefits from the Teacher Retirement Fund, unless he first release to the State the funds contributed by the State. It has no application to the facts of this case, since neither the teacher nor the respondent was shown to have been receiving any other pension. When such a case is presented we should decide that question, and not before.

Nor would a "nominee", under like circumstances as the respondent, be forbidden by the other underscored constitutional provision from receiving the earned, accrued and unpaid balance due a teacher-member from the retirement fund at the time of the member's death. The reasoning of the Court of Civil Appeals on this point is clear and convincing, and from its opinion we quote:

"The annuity benefits under the Teacher Retirement System are determined by fixed standards and formulas prescribed by law. No person not qualified under the Constitution or the statutes is originally eligible to receive benefits under the Retirement Act. Once these rights have accrued in favor of one eligible to receive them, there is no constitutional prohibition against their assignment or transfer. The Retirement Acts expressly authorize such transfer.

"The question here is not the same as would be presented if the pension granted was a stipulated sum per month during the life of a teacher. That such a pension could not be assigned so as to be effective after the death of the teacher is obvious. The benefits here, however, are of an entirely different nature. They are certain and fixed as of the date of retirement. It is only the method of payment which is optional with the teacher. She may elect to receive a membership annuity in an annuity payable throughout her life; or she may elect to receive the actuarial equivalent of her membership annuity in a reduced membership annuity payable throughout her life, with the optional provisions that all or one-half of such reduced membership annuity shall continue after her death in favor of some one designated by her to receive it; or that other benefits may be paid the teacher or her nominee provided that such other benefits, together with the reduced membership annuity, are of equivalent actuarial value of her membership annuity. Similar provisions are made with respect to her prior-service annuity. Subsection 7, Sec. 5, 1941 Act."

In any event, the same amount of money, calculated on an actuarial basis, is due from the retirement fund, regardless of the option exercised by the teacher-member. It is the teacher who earned the benefits. That money, when actuarially determined, is credited to his individual account in the retirement fund. Like the proceeds or benefits of a matured endowment life insurance policy, the annuities are his to dispose of as he sees fit. The fact that he may share his bounty with another does not change its character nor create new obligations. It is merely a method of payment. Actuarially and theoretically the choice of an optional plan neither increases nor diminishes the amount to be paid. It is based upon anticipated life expecancies from standard mortality tables, and remains the same at all times and to all persons similarly situated. It is no more burdensome on the State or the System because the life expectancies of two persons rather than one may enter into the calculations of the actuarial amount due. The overall results are the same. The

constitutional amendment does not expressly or by implication prohibit a teacher-member from accepting a reduced membership annuity throughout retired life with a provision that what he otherwise could have received while he lived should pass to some chosen beneficiary after his death. Certainly the State would have no right under the Constitution to attempt to control the disposition of the unused proceeds or money derived from a lump-sum settlement at the time of a teacher's retirement, if the law authorized such a settlement, and for like reason the State should not be concerned with the disposition of earned and unpaid funds standing to the credit of a teacher-member at the time of his death.

The petitioners have erroneously assumed that a nominee or designee under an optional allowance is a pensioner attempting to qualify as a teacher-member. Such is not the case. On the contrary, he is a mere beneficiary designated to receive the unpaid balance due the teacher at the time of his death, a balance which ordinarily the teacher might have been paid before death had he elected to receive upon retirement the whole of his membership and prior-service annuity payments for life, rather than the reduced amount with remainder to another. Similar optional annuity settlements have long been adopted and followed by life insurance companies whose payments are determined from the same mortality tables; and since the annuity benefits belong to the teacher why should he not be allowed to select the option of settlement which is most desirable to him, particularly since his selection is without increased burden to the State, or the Teachers' Retirement System? Neither the Constitution nor public policy forbids the practice. The Legislature was authorized to so provide.

Due to our conclusions that Miss Reilly did not retire within the meaning of the Act we must reverse the judgment of the trial court and Court of Civil Appeals, and render judgment refusing the writ of mandamus. It is so ordered.

Opinion rendered March 2, 1949.

MR. JUSTICE GARWOOD concurring.

While disposed to agree with the majority view that relator is not entitled to the writ under the terms of the statute, I think the same result should have been reached by declaring unconstitutional the so-called "option" provisions of the law in so far as they permit of a person like relator, who has never

been a teacher, to enjoy a teacher's pension. This, of course, in no way challenges the rights of teachers themselves to enjoy the retirement benefits which the law provides.

Courts do, it is true, tend to avoid constitutional questions, when the particular cause may be disposed of on other grounds, but, to borrow the words of the Court of Appeals of New York when confronted with a situation rather similar to the present, "While it may be possible to dispose of this particular appeal without deciding this question of constitutionality, nevertheless it is fairly presented to us, and public interests require that it it should be determined." People, ex rel, Unger v. Kennedy, 207 N. Y., 533, 540, 101 N. E. 442. See also Borgnis v. Falk Co., 147 Wis. 327, 133 N. W. 209. Both cited cases upheld the statutes in question, but since the public interest seems to be the controlling factor, the same rule ought to apply whether the court intends to strike down or uphold the statute, especially in a case like the present, in which the state itself, through its Attorney General, suggests and argues the invalidity of the particular provisions in question. Teachers of the public schools being the important element of our population that they are, the sooner and more completely they are advised of their rights or lack of them, the better.

As respondent's brief appears properly to concede, the literal significance of the constitutional proviso, "no person shall be eligible for a pension under this amendment who has not taught twenty years in the State of Texas", is to bar respondent's claim, because admittedly he has never been a teacher. There is nothing in the words "eligible" or "pension" to indicate the contrary. It is common knowledge that the word "pension" is applied to one who benefits from state payments earned or merited by another quite as often as to one who actually rendered the service from which the benefits arise. If relator were successful in this suit, surely it would not be thought unusual to refer to the income he would receive as a "pension". Admittedly part of it would come from moneys contributed by the state as distinguished from that contributed by a teacher through salary deductions. The words "but shall be entitled to a refund of the moneys paid into the fund" do suggest that the authors of the amendment may have been thinking of an original contributor rather than an assignee or "nominee", but it is at best only a suggestion. And at the same time, the phrase considered alone is not inconsistent with the idea that the salary contributions of the teacher might be refunded to anyone en-

titled thereto—whether it be the teacher in question, her heirs or an assignee.

Aside from this one statement about refunds, there is nothing in the wording of section (48(a) suggesting a qualification of the strong statement limiting pensions to those who have taught at least twenty years in Texas, and accordingly the action of the legislature, in permitting pensions to non-teachers such as relator, is in conflict with the Constitution.

As I understand the argument upholding the constitutionality of the "option" provisions of the law, it is this: That, even assuming the word "pension" in section 48(a) to be broad enough to include payments to a beneficiary or assignee of a retiring teacher and accordingly, by its literal significance, to bar relator, who is not a teacher, from receiving such payments, nevertheless a literal interpretation would be at variance with a common sense construction of the section as a whole. In this behalf it is said that the section does not contain any restrictions as to how pensions are to be paid to the teachers who earn them and that, since an earned pension has a value, which may be actuarially computed in terms of money at the time of retirement, the Constitution in effect purports to award each retiring teacher such a value, which he or she may dispose of to a non-teacher or anyone else at will; and that accordingly the restriction of pensions to persons who have taught twenty years or more must be taken to apply only to the matter of who may originally earn a pension. It is said that, for example, the legislature could without violating section 48(a), make a pension payable in a cash lump sum, in which event it would be absurd to suppose that the retiring teacher could not give that sum to anyone he or she might elect. The difficulty with this argument arises from the very last proviso of section 48(a), underscored in the majority opinion, which is an important restriction of general character and is obviously designed to prevent any one individual from enjoying double benefits from state funds by reason of pensions. It would prevent the same retired teacher from earning a second teacher's pension or some other type of pension based in part or whole on state payments. It would also necessarily forbid a non-teacher from enjoying two or a dozen teacher's pensions, as assignee or "nominee" of several retired teachers, or from enjoying in the same capacity, a teacher's pension, while at the same time receiving some other type of pension either in his own right or as assignee. Surely if one who originally earns a retirement benefit cannot qualify for another such benefit, his or her as-

signee should not be allowed to do so. But, if the argument is sound that the benefit rights contemplated by section 48(a) are in effect the same as a cash lump sum payable to the teacher on retirement and therefore transferable at will, it also follows that the assignee is free to accept benefit assignments from an unlimited number of teachers, and even to do that and at the same time qualify for some other pension in his own right. If the legislature should be free to make the benefits payable in a cash lump sum to the retiring teacher, how would the state ever protect itself from paying double benefits to the same individual as assignee? I therefore think section 48(a) authorizes payment of benefits to teachers only and does not authorize the assignment of benefit rights. This view, of course, in no wise limits a teacher's right to dispose at will of his or her own salary contributions to the pension fund. It is only the matter of the state's contribution which is involved.

Opinion delivered March 2, 1949.

Rehearing overruled March 30, 1949.