**Emory F. VERNON et al., Appellants,**

v.

**STATE of Texas ex rel. CITY OF SAN ANTONIO et al., Appellees.**

**No. 204.**

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 25, 1966.

Rehearing Denied Sept. 15, 1966.

H. Gordon Davis, Harvey L. Hardy, San Antonio, for appellants.

James E. Barlow, Sam S. Wolf, J. Bruce Aycock, Marvin T. Deane, San Antonio, for appellees.

## OPINION

NYE, Justice.

This is a quo warranto proceeding filed by the State of Texas, as plaintiff, on the relation of the City of San Antonio and the Town of Windcrest attacking the validity of the incorporation as a municipality the Town of Stonegate in Bexar County, Texas.

The trial was to a jury. At the close of the evidence, most of which was of a documentary nature, the trial court granted the plaintiffs' motion for judgment and took the case from the jury, declaring that the Town of Stonegate was void and that the officials be ousted. The trial court found that the attempted incorporation of the Town of Stonegate, Texas, was void from the beginning for: 1) the lack of compliance with Article 970a, Vernon's Ann. Civ.St.; and, 2) for the reason that on October 8, 1964, the City of San Antonio by a duly enacted ordinance took the first legal step asserting annexation jurisdiction over the territory. The defendants in the trial court were the Mayor and Aldermen and certain inhabitants of the Town of Stonegate. They have perfected their appeal to this Court.

Appellants' points on appeal are:

1. That the trial court erred in not granting defendants' motion for instructed verdict and judgment and in not rendering judgment for defendants declaring the Town of Stonegate to be validly incorporated because:

(a). Article 970a is unconstitutional under Article II, Section 1 of the Constitution of the State of--Texas, Vernon's Ann.St.

(b). The ordinance passed December 10, 1959, by the City of San Antonio, as a first reading of annexation, was no longer effective on October 30, 1964.

(c). Ordinance #32815 City of San Antonio dated October 8, 1964, was not an assertion of annexation jurisdiction.

2. The trial court erred in not sustaining defendants' special exception to the effect that Ordinance #32815 (and others) were improperly pleaded.

3. The trial court erred in not submitting the question of abandonment of the Ordinance #28156 to the jury.

The chronological order of events leading up to this litigation that effect the decision of this case are as follows:

| | |
|---|---|
| May, 1963 | The Municipal Annexation Act of 1963 certified as Art. 970a, V.A.C.S., was passed and approved by the Legislature and took effect 90 days after May 24, 1963, adjournment date. |
| Aug. 22, 1963 | Effective date of Municipal Annexation Act, Art. 970a, V.A.C.S. |
| Nov. 20, 1963 | All ordinances not brought to completion (within 90 days of effective date of act) are abandoned and released as a matter of law from the jurisdiction of City of San Antonio. Art. 970a, Sec. 7D, V.A.C.S. |
| Oct. 8, 1964 | Ordinance No. *32815* adopted in compliance with Art. 970a, Sec. 6, V.A.C.S. (calling for public hearing of proposed annexation of subject Stonegate area). |
| Oct. 9, 1964 | Notice of Public hearing published in newspaper (Ordinance No. 32815) Art. 970a, Sec. 6, V.A.C.S. |
| Oct. 22, 1964 | Public hearing held on Oct. 22, 1964. (Ordinance No. 32815) Art. 970a, Sec. 6, V.A.C.S. |
| Oct. 30, 1964 | Application to incorporate the Town of Stonegate filed with County Judge. |
| Nov. 5, 1964 | Ordinance No. *32874* passed (first reading) annexing Stonegate territory. (result of public hearing, Ordinance No. 32815) |
| Nov. 5, 1964 | Ordinance 32875 passed by City of San Antonio adopted agreement with City of Windcrest apportioning the overlap extraterritorial jurisdiction. Art. 970a, Sec. 3 B, First paragraph. |
| Nov. 6, 1964 | Ordinance No. *32874* published in newspaper. |
| Nov. 6, 1964 | Election ordered by County Judge to determine question of incorporation of Stonegate. |
| Nov. 9, 1964 | Agreement to apportion the overlapped extraterritorial jurisdiction approved by the City of Windcrest. |
| Dec. 4, 1964 | County Judge declared Town of Stonegate duly incorporated. |
| Dec. 8, 1964 | This quo warranto suit instigated by the State of Texas. |
| Dec. 17, 1964 | Ordinance No. *32874* finally passed by City of San Antonio annexing Stonegate territory. Art. 970a, Sec. 6. |
| Jan. 9, 1965 | Election of Mayor and Aldermen of Town of Stonegate. |

The City of San Antonio was a home rule city, having a population in excess of six hundred thousand (600,000) inhabitants. The Town of Windcrest situated

northeast of the city limits of San Antonio was a duly incorporated municipality, having a population of less than five thousand (5,000) inhabitants. The area in question sought to be incorporated as a Town called Stonegate, lies adjacent to and northeast of the City of San Antonio and also adjacent to the Town of Windcrest.

On October 8, 1964, the City Council of the City of San Antonio adopted an Ordinance (No. 32815) in compliance with Art. 970a, Sec. 6 giving notice to all interested persons of the City's intention to annex certain territory which included that portion of the Stonegate area in question. Notice of the public hearing was published (October 9, 1964) and the hearing was held on October 22, 1964.

On October 30, 1964, application to incorporate the Town of Stonegate was filed with the County Judge of Bexar County, Texas. This application admittedly complied with all applicable statutes, other than Art. 970a, V.A.C.S. The area included in the application to incorporate Stonegate was situated within the extraterritorial jurisdiction of the City of San Antonio. More than half of the area proposed by the incorporators to be included within the Town of Stonegate, was situated within the *exclusive* extraterritorial jurisdiction of the City of San Antonio and the remainder of such Stonegate area was situated within an area that overlapped the extraterritorial jurisdiction of the Town of Windcrest and the City of San Antonio. In other words, the proposed area to be incorporated as the Town of Stonegate was within the extraterritorial jurisdiction of the City of San Antonio, a part of which was also in the extraterritorial jurisdiction of the Town of Windcrest.

On November 5, 1964, the City of San Antonio, pursuant to its expression of its intention to annex the territory in question as expressed in Ordinance No. 32815, passed on first reading Ordinance No. 32874 annexing the Stonegate area. On the same day the City of San Antonio passed Ordinance No. 32875 adopting a written agreement with the Town of Windcrest apportioning the overlapping extraterritorial jurisdiction under Article 970a, Sec. 3 B, first paragraph, between the two municipalities. This mutual agreement apportioning the overlapping area of extraterritorial jurisdiction was finally approved by the City of Windcrest on November 9, 1964, and therefore was consummated. On December 17, 1964, Ordinance No. 32874 (passed on first reading on November 5, 1964) was finally passed by the City of San Antonio, annexing all of the area covered by proposed incorporation of the Town of Stonegate.

On December 4, 1964, the County Judge of Bexar County, pursuant to an election ordered on November 6, 1964, declared the Town of Stonegate duly incorporated. On January 9, 1965, the Mayor and Aldermen of the Town of Stonegate were elected pursuant to an election called by the County Judge of Bexar County.

The Municipal Annexation Act, Article 970a, V.A.C.S., passed by the Legislature of the State of Texas "In order to promote and protect the general health, safety, and welfare of persons residing within and adjacent to the cities of this State * * *" declared in such Act (Sec. 3) that it is " * * * to be the policy of the State of Texas that the unincorporated area, not a part of any other city, which is contiguous to the corporate limits of any city, to the extent described herein, shall comprise and be known as the extraterritorial jurisdiction of the various population classes of cities in the State and shall be as follows:

"(1) The extraterritorial jurisdiction of any city having a population of less than five thousand (5,000) inhabitants shall consist of all the contiguous unincorporated area, not a part of any other city, within one half (½) mile of the corporate limits of such city. * * *"

"(5) The extraterritorial jurisdiction of any city having a population of one hundred

thousand (100,000) or more inhabitants shall consist of all the contiguous unincorporated area, not a part of any other city, within five (5) miles of the corporate limits of such city."

Section 8A of this Article provides that "No city may be incorporated within the area of the extraterritorial jurisdiction of any city without the written consent of the governing body of such city. * * *" If only a portion of the proposed new city lies within extraterritorial jurisdiction of an existing city (City of Windcrest) such consent must be obtained for that portion to be included as a part of the new city.

■■■ The unincorporated area of Stonegate was under the extraterritorial jurisdiction of the City of San Antonio and the City of Windcrest. It is undisputed that the incorporators of the Town of Stonegate did not seek or obtain the written consent of the governing bodies of the cities who exercised extraterritorial jurisdiction over the area sought to be incorporated by virtue of Article 970a, V.A.C.S. They neither sought nor obtained the written consent required under Section 8A of Art. 970a as to (1) the exclusive area within the extraterritorial jurisdiction of the City of San Antonio; (2) the joint authorization from the City of San Antonio and the Town of Windcrest comprising the overlapping area of extraterritorial jurisdiction; nor (3) the separate consent from the cities of San Antonio and Windcrest for the areas apportioned by mutual agreement between the two cities. Where the attempted incorporation violates a pertinent statute or fails to comply with a mandatory provision thereof, the certification of the County Judge is not conclusive. This holding was approved by the Supreme Court of Texas in Red Bird Village v. State ex rel. City of Duncanville, 385 S.W.2d 548, Tex.Civ.App.1964, wr. ref. The Legislature has the power to provide the conditions under which cities may incorporate and all conditions precedent required by statute must be substantially complied with.

39 Tex.Jur.2d Sec. 8, p. 370—Sec. 12, p. 373.

It is defendants' contention that Art. 970a is unconstitutional. It is their theory that a particular provision in Section 3B, second paragraph, of Art. 970a, which provides for a District Court to perform a legislative task of apportioning territory of an area under the extraterritorial jurisdiction of one or more cities, is unconstitutional in that it violates Art. II, Section 1 of the State Constitution. This constitutional provision provides for the separation of the powers of government. The second step in defendants' theory is that this particular provision is inseparable from the other provisions of the "Municipal Annexation Act" because there is no way to end the overlaps of extraterritorial jurisdiction created by the Act except for the unenforceable method of voluntary agreement, and absent such agreement, and with such overlaps, the entire Act breaks down. Therefore, as appellant contends, Art. 970a is wholly geared to the concept of extraterritoriality rendering the entire statute unconstitutional. The third step in defendants' theory is that Ordinance No. 32815, enacted October 8, 1964, was not an assertion of the first or prior jurisdiction by the City of San Antonio because it was passed pursuant to this void statute (Art. 970a) and did not comply with the proper method of instituting annexation proceedings prescribed by the City Charter of San Antonio, Section 3, paragraph 2. Defendants contend that since Art. 970a is void the City Charter controls under Texas law, and their application for incorporation filed October 30, 1964, with the County Judge acquired jurisdiction first over the Stonegate area thereby making the incorporation of their city valid.

Article 970a, Section 3B, reads as follows:

"In the event that on the effective date of this Act the area under the extraterritorial jurisdiction of a city overlaps an area under the extraterritorial jurisdiction of one or more other cities, such

overlapped area may be apportioned by mutual agreement of the governing bodies of the cities concerned. Such agreement shall be in writing and shall be approved by an ordinance or resolution adopted by such governing bodies.

"At any time after one hundred and eighty (180) days from the effective date of this Act, any city having an extra-territorial claim to such overlapping area shall have authority to file a plaintiff's petition in the district court of a judicial district, within which is located the largest city having an extraterritorial claim to such overlapped area, naming as parties defendant all cities having a claim to such overlapped area and praying that such overlapped area, to which it has mutual claim, be apportioned among the cities concerned. *In effecting such apportionment, the district court shall consider the population densities and patterns of growth, transportation, topography, and land utilization in the cities concerned and in the overlapped area.* The territory so apportioned to a city shall be contiguous to the extraterritorial jurisdiction of such city. In the event the extraterritorial jurisdiction of a city is totally overlapped, the territory so apportioned to such city shall be contiguous to the corporate boundaries of such city. Such territory so apportioned shall be in a substantially compact shape. *Such overlapped area shall be apportioned among such cities in the same ratio (to one decimal) as the respective populations of the cities concerned bear to one another, but in such apportionment no city shall receive less than one-tenth (⅒) of such overlapping area.* Provided, however, that any apportionment made under the provisions of this Subsection shall give consideration to existing property lines, and no tract of land or adjoining tracts of land, under one ownership upon the effective date of this Act and not exceeding one hundred and sixty (160) acres in size shall be apportioned so as to be within the extraterritorial jurisdiction of more than one city unless the landowner consents in writing to such apportionment." (Emphasis supplied)

The offending sentence, which appellant contends as being a delegation to the District Court of a legislative function, reads as follows:

In effecting such apportionment, the district court shall consider the population densities and patterns of growth, transportation, topography, and land utilization in the cities concerned and in the overlapped area.

The courts favor the constitutionality of statutes and the cardinal principle of statutory construction is to save, not to destroy. Our courts are obligated to uphold such laws and avoid doubts as to the constitutionality wherever possible. The courts should be reluctant to strike down a statute as unconstitutional unless and only when it is absolutely necessary on the facts or circumstances presented by the particular case. Woods v. Reilly, 147 Tex. 586, 218 S.W.2d 437, 442 (1949); 16 C.J.S. Constitutional Law § 98, p. 359. The cities of San Antonio and Windcrest were able to agree and did agree on the apportioning of the overlapped area. They did not seek the aid of the district court.

In the field of constitutional law, no stronger presumption exists than that which favors the validity of a statute. A legislative act must be sustained unless it is clearly invalid beyond a reasonable doubt. State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737, 747 (1960); Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 at 440 (1946). The strength of this presumption is nurtured by an appreciation of the needs of the people and by a recognition that laws are directed to problems manifest by experience. The courts will not exert ingenuity to find reasons for holding a statute invalid; rather, they will sustain its

validity even if it is valid by the narrowest margins. Texas Nat. Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W. 2d 627–634 (1939); Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269–277 (1944). This is particularly true when the statute pertains to governmental policies established in the interest of public health, safety, and welfare as is present in this statute. Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, 486 (1934); 12 Tex.Jur.2d, Constitutional Law, Sec. 36, p. 380.

▆▆▆ The provisions of the first and second paragraphs of Section 3 B are permissive and are not mandatory. The Legislature directed, absent the mutual agreement of the governing bodies of the cities concerned (Sec. 3 B, second paragraph), that "Such overlapped area shall be apportioned among such cities in the same ratio (to one decimal) as the respective populations of the cities concerned bear to one another, but in such apportionment no city shall receive less than one-tenth (⅒) of such overlapping area." Other guidelines given by the Legislature in carrying out this judicial apportionment, include consideration to existing property lines, ownership, the size of the area to be apportioned, landowners' consideration and in addition the guidelines which the appellants consider as legislative in nature. The cities of San Antonio and Windcrest did agree and did apportion the overlapped area. Although the cities had authority to file suit in district court in the event they were unable to mutually agree to apportion the overlapped area, such action never took place and is not before us for a determination of its propriety. We therefore do not express any opinion as to the validity of the judicial apportionment provision contained in the second paragraph of Section 3B of Art. 970a, as it is not necessary for us to do so for the proper disposition of this case under the facts before us. However, even if the judicial apportionment

provision complained of in Section 3B second paragraph was invalid, we hold it is severable from the Act. Art. IV, Chap. 160, (Severability) pp. 447–454, Acts of 58th Legislature-Regular Session, 1963, "Municipal Annexation Act." It is incumbent upon the courts to sever any unconstitutional provision and to sustain the remainder. See Harris County Water Control & Imp. Dist., etc. v. Albright, 153 Tex. 94, 263 S.W.2d 944 (1954); and see City of Taylor v. Taylor Bedding Mfg. Co., 215 S.W.2d 215–217, Tex.Civ.App. (1948), wr. ref. This is especially true where the statute concerns several matters. Davis v. White, 260 S.W. 138–141, Tex.Civ.App. (1924), wr. ref. We believe that if such section which appellants complain of, should be held invalid, it is not so intermingled with other parts of the Act as to make it impossible to separate from the balance of the Act.

▆▆▆ Appellants contend by a series of hypothetical examples that the failure of one or the other of the cities to agree to apportionment, or to give their consent to the incorporation of the overlapped area, will render such area in effect, a "no man's land". This contention is not well taken for the Act provides in Section 7B that such territory can be annexed to one or the other of the cities where the majority of the owners request such annexation. In Section 8A where the governing body refuses to grant permission for the incorporation of such proposed city, then under certain conditions this section of the law authorizes the consent for the incorporation of such proposed city in such area.

▆▆▆ No principle of law is more firmly established in this nation and in this state than that which says that the courts will not anticipate a constitutional issue. Bush v. State of Texas, 372 U.S. 586, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963). When considering the theory of the petitioners as to the constitutionality of a cer-

tain act, our Supreme Court said in Woods v. Reilly, supra: "It [this theory] has no application to the facts of this case * *. When such a case is presented we should decide that question, and not before" It is fundamental that abstract questions regarding the validity of a statute will not be considered. St. Louis Southwestern Ry. Co. v. State, 113 Tex. 570, 261 S.W. 996 at 997 (1924); English Freight Co. v. Knox, 180 S.W.2d 633, 642, Tex.Civ.App. (1944) ref., w. m.

■ The issue of judicial apportionment of overlapping extraterritorial jurisdiction is not present in this case; therefore, appellants are in reality requesting an advisory opinion—something the courts decline to give. Hill v. Sterrett, 252 S.W.2d 766, 771, Tex.Civ.App. (1952), ref. n. r. e. Mere apprehension of what might have happened, but did not, does not justify the consideration of a constitutional question. Dallas Taxicab Co. v. City of Dallas, 68 S.W.2d 359, 363, Tex.Civ.App. (1934). It was said in Andrews v. Smith, 93 S.W.2d 493–495, Tex.Civ.App. (1936) wr. ref. that it is the settled rule in this state that:

"[I]f proper disposition of a case may be made without consideration of a question as to the constitutionality of a statute, that question should not be passed upon by the court." Citing cases. "Especially should this be the rule where the court passing on the question of constitutionality of a statute is a trial or an intermediate appellate court."

Not only is the question of the validity of Art. 970a, V.A.C.S. anticipatory and abstract, it is not necessary to the proper disposition of this case. Therefore, it should not be considered. Smith v. Feather, 149 Tex. 402, 234 S.W.2d 418 at 421 (1950); Wood v. Wood, 159 Tex. 350, 320 S.W.2d 807–813 (1959); San Antonio General Drivers, etc. v. Thornton, 156 Tex. 641, 299 S.W.2d 911 at 915, Sup.Ct. (1957).

The Supreme Court held that Section 16, Art. 1 of the Texas Constitution did not prohibit the legislature from making the relevant provision of Art. 970a retroactive to certain pending annexation proceedings. Deacon v. City of Euless, Texas, 405 S.W.2d 59, July 9, 1966. There, the court considered the size limitation prescribed by the Legislature in Art. 970a. Again this statute as to time limitation for establishing jurisdiction was considered in Red Bird Village v. State, supra, and writ of error was refused by our Supreme Court. Appellants attack the constitutionality of the entire Art. 970a. The fact that the Supreme Court of our State has been called upon on two occasions to give effect to Art. 970a concerning the time limitation and size limitation set forth in such statute and approving such article in those particulars, is to be considered with favor as to its constitutionality. 12 Tex. Jur.2d Constitutional Law, Sec. 41, p. 385. We hold that the applicable provisions of Art. 970a as applied to the facts in this case are constitutional.

■ We therefore hold that the failure of the incorporators of Stonegate to obtain the required consent or authorization for the incorporation of their proposed city in compliance with Art. 970a, Sec. 8A, invalidates the proposed incorporation of the Town of Stonegate. We have considered all of appellants' points, which are overruled.

Judgment of the trial court is affirmed.