Harold J. ERBS, et al., Relators,

v.

Bill BEDARD, Judge Probate Court No. 3 of Dallas County, Texas, et al., Respondents.

No. 05-88-01044-CV.

Court of Appeals of Texas, Dallas.

Nov. 1, 1988.

Rehearing Denied Dec. 5, 1988.

James E. Coleman, Jr., Marvin S. Sloman, Elizabeth D. Whitaker, and Theresa A. Couch, Dallas, for relator.

Walter E. Workman, S. Stacy Eastland, and Robert Weylandt, Houston, for River Oaks Trust Co.

James J. Hartnett, Dallas, for R. Clay Underwood.

Timothy R. McCormick, Frank Finn, and John E. Sullivan, Dallas, Deborah Beck McWilliams, Austin, for relators Quest Microwave, Inc.

Terence M. Murphy, Dallas, for relators Erbs, Fiedorek Hartin, Nelson and Reese.

Ray G. Besing, Michael Byrd, Dallas, for appellee.

Before STEPHENS, STEWART and ROWE, JJ.

## ON WRIT OF MANDAMUS

STEPHENS, Justice.

Relators Harold J. Erbs, James E. Erbs, Eugene C. Fiedorek, Kenneth R. Hartin, Paul T. Nelson, and Frank D. Reese (collectively the directors) seek a writ of mandamus to compel the presiding judge of Probate Court No. 3 of Dallas County, Texas, to dismiss certain litigation for want of

subject-matter jurisdiction. In the alternative, they seek a writ of mandamus to compel the Honorable Kenneth Pat Gregory, the presiding judge of the statutory probate courts of Texas, to vacate the order assigning himself as a visiting judge to preside over that litigation or to disqualify himself from so presiding. This Court held in a companion case, *Qwest Microwave, Inc., v. Bedard,* 756 S.W.2d 426 (Tex.App. —Dallas 1988, orig. proceeding) (*Qwest I*), that the probate court lacked subject-matter jurisdiction over certain causes of action brought therein against the corporate relators. The litigation in *Qwest I* is the same as that underlying this proceeding (Qwest II). The relators in this proceeding are the individual directors of the corporate relators in *Qwest I;* the directors now seek the same relief that the corporate relators sought in *Qwest I.* We expressly do not concern ourselves in this proceeding with the general administration of the estate of Dorothy J. Warren, deceased, or with any other litigation brought against still other related corporations that were not parties in *Qwest I* or in this proceeding. For the reasons given below, we conditionally and partially grant the directors' petition for writ of mandamus as to certain litigation and order that Judge Gregory sign an order of dismissal for want of subject-matter jurisdiction as to the directors in certain causes of action and cause that order to be entered in the minutes of the Probate Court No. 3 of Dallas County, Texas. We deny all other relief requested in the petition for writ of mandamus.

## I.

The facts of this case were carefully outlined in this Court's *Qwest I* opinion, *Qwest,* 756 S.W.2d at 428–30, and we will not reiterate those background facts here. In *Qwest I* this Court held that the probate court has no subject-matter jurisdiction over the last four causes of action in the third amended petition of real parties in interest R. Clay Underwood and River Oaks Trust Company, co-administrators with will annexed of the estate of Dorothy J. Warren, deceased (collectively the administrators). We so held because we concluded that the administrators brought those causes of actions not in their capacity as personal representatives of Warren's estate, but in their capacity as shareholders, in trust for the estate, of two of the corporations that were relators in *Qwest I.* In short, those causes of action were essentially shareholders' derivative actions. *Qwest,* 756 S.W.2d at 435. We similiarly conclude here that the probate court lacks subject-matter jurisdiction over any claim asserted against the directors, the instant relators, as to the second through fifth causes of action in the third amended petition, for the same reasons given in *Qwest I,* and so hold. As to all other remaining parties in the underlying litigation that have not appeared before this Court in either *Qwest I* or Qwest II, we emphasize that they are not parties before us challenging the subject-matter jurisdiction of the probate court over any cause of action asserted against them by the administrators. We also again emphasize that those parties not appearing in *Qwest I* or Qwest II are not parties before us challenging the assignment of Judge Gregory as the judge of the Probate Court No. 3 of Dallas County, Texas. Hence, we leave those parties, namely, the corporations Qwest Microwave III, Inc., Qwest Microwave IV, Inc., Qwest Microwave V, Inc., Qwest Microwave VI, Inc., Qwest Microwave VII, Inc., Qwest Properties, Inc., Qwest Management, Inc., and De Vere E. Galland as we find them, litigants before Judge Gregory.

## II.

In the instant proceeding, however, a careful examination of the first cause of action contained in paragraph III of the administrators' third amended petition is required. That first cause of action did not name any party appearing in *Qwest I,* and therefore this Court declined to consider that first cause of action in its opinion. *Qwest,* 756 S.W.2d at 430. The first cause of action was brought in the name of Warren's estate itself. It asserted that Erbs was personally liable to the estate and that several related corporations and their individual directors, including all the directors

who are relators herein, were also liable to the estate because of their acquiescence in, imputed knowledge of, and unjust enrichment and benefits from, Erbs's actions. The paragraph from that cause of action asserting Erbs's liability is quoted in full:

F. Harold J. Erbs is liable to the Estate (a) for dilution of the Estate's interests in Qwest I and Qwest II as a result of (i) issuing additional shares to get financing for his new Qwest companies, (ii) clouding preemptive rights, (iii) clouding cumulative voting rights, (iv) setting limits on dividends, and (v) wasting corporate assets in appropriating their credit, know-how, goodwill, personnel and facilities for the benefit of Erbs' self-dealing corporations, (b) for the value of the investment opportunities he took away from estate assets and appropriated for his self-interest, (c) for exposing Qwest I and Qwest II to being liable for 80 million dollars debt to [General Electric Credit Corporation] which primarily benefits the self-dealing of Erbs, (d) for exemplary, or punitive, damages because of his reckless disregard of his fiduciary capacity to the Estate and his flagrant breaches of trust, and (e) for an accounting of the interest he acquired, and profits he received at the expense of the Estate, including those from Qwest III, Qwest IV, Qwest V, Qwest VI, Qwest VII, Qwest Properties and Qwest Management, by way of dividends, compensation, bonuses, pension, insurance, and benefits of any kind; in the alternative, to the Estate as beneficiary of assets which he holds, and has heretofore received, as constructive trustee.

Thus, the first cause of action, the only cause brought in the name of the estate, made general allegations that Erbs was liable because of his own purportedly tortious acts toward the estate, and that certain other parties, including all the relators here other than Erbs himself, were vicariously liable because of their acquiescence in Erbs's actions. Erbs's purportedly tortious acts allegedly caused direct harm to the estate itself, and not to the estate only in its capacity as shareholder in any corporation.

■ The probate court, however, has never had an opportunity to rule on the question of its jurisdiction over the first cause of action, since the third amended petition was filed some eight months after the probate court had already ruled on the motion to dismiss that attacked the causes of action in the second amended petition. (Those causes of action in the second amended petition were incorporated in the third amended petition as the second, third, fourth, and fifth causes of action; the first cause of action in the third amended petition was entirely new. *See Qwest,* 756 S.W.2d at 429–30, 437. Additionally, we recognize that a plaintiff's cause should not be dismissed without affording the plaintiff the right to cure the defect necessitating dismissal, if the defect can be cured. *See Atkinson v. Reid,* 625 S.W.2d 64, 66 (Tex. App.—San Antonio 1981, no writ). Because the probate court was never requested to rule on the question of its jurisdiction over a cause of action asserted for the first time only in the administrators' third amended petition, by motion to dismiss or otherwise, we conclude that mandamus will not lie to compel the probate court to dismiss that cause of action. While we expressly note that that cause of action asserts harm directly caused to the estate itself, rather than harm caused to corporations in which the estate was a shareholder (thereby causing only incidental harm, if any, to the estate), we also expressly reserve ruling at this time on the question of the probate court's jurisdiction over the first cause of action asserted in the administrators' third amended petition.

### III.

■ The directors assert that section 25.0022 of the Texas Government Code, which Judge Gregory relied upon to assign himself as a visiting judge, is now unconstitutional, because former section 16a of the Texas Constitution, a specific constitutional provision providing for assignment of judges, was repealed in 1985. The directors contend that this defect renders the order void. Mandamus is proper to correct a void order, one which a trial court has no

power to render. *Qwest,* 756 S.W.2d at 431; *Tenneco, Inc. v. Salyer,* 739 S.W.2d 448, 449 (Tex.App.—Corpus Christi 1987, orig. proceeding). Thus we must examine the constitutional underpinning of section 25.0022 of the Texas Government Code.

The Texas Constitution, article 5, former section 16a, provided authority for the legislature to create a method of assignment of judges for the statutory probate courts. It read:

> The legislature, by local and general law, may provide a system for judges of statutory courts with probate jurisdiction to hold court in any county in this state for any other statutory court judge with probate jurisdiction or for a judge of a constitutional county court.

This constitutional provision was repealed by election on November 5, 1985. During the two years the specific constitutional provision was in effect, however, the legislature enacted section 7, article 1969b, Vernon Revised Civil Statutes, which provided for the assignment of judges under the following conditions:

> Assignment of Judges. Judges may be assigned in the manner provided by this Act to hold court in a *constitutional* county court, *statutory probate court, county court at law exercising probate jurisdiction,* or any statutory court exercising probate jurisdiction when:
>
> (1) the regular judge requests assignment of another judge to his court;
>
> (2) the regular judge is absent or is disabled or disqualified for any cause;
>
> (3) the regular judge is present or is trying cases as authorized by the constitution and laws of this state;
>
> (4) the office of the regular judge is vacant *by reason of death, resignation, or other cause;* or
>
> (5) a motion to recuse the regular judge of a statutory probate court has been filed.

(Emphasis added.) This statutory provision was codified in 1987 into section 25.-0022(i) of the Texas Government Code, with some minor revisions (the underlined language does not appear in the codification).

*See* TEX.GOV'T CODE ANN. § 25.0022(i) (Vernon 1988).

▪ Absent the specific constitutional provision of article V, section 16a, the Texas Constitution nonetheless contains a broad grant of power to the legislature in article V, section 1, which states: "The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto." That constitutional provision has been in effect since 1891. TEX. CONST. art. V, § 1 (1891, amended 1978). Thus, it is clear that the legislature has a broad, general grant of power to establish and *prescribe the organization* of courts.

▪ In the field of constitutional law, no stronger presumption exists than that which favors the validity of a statute. A legislative act must be sustained unless it is clearly invalid beyond a reasonable doubt. *Vernon v. State ex rel. City of San Antonio,* 406 S.W.2d 236, 242 (Tex. Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). Even after the repeal of former section 16a of the Texas Constitution, we cannot conclude, in light of the Texas Constitution, article V, section 1, currently in effect, that section 25.0022(i) of the Texas Government Code is clearly invalid beyond a reasonable doubt. It necessarily follows that we cannot conclude that Judge Gregory abused his discretion in following the assignment procedure set out for statutory courts with probate jurisdiction, as prescribed in section 25.0022(i) of the Texas Government Code.

▪ The directors next contend that section 74.053 of the Texas Government Code applies in this case. That section provides for the automatic disqualification, upon a party's objection, of a judge assigned by the presiding judge of a judicial administrative region. The directors argue that, because objection was made to Judge Gregory sitting as a visiting judge, section 74.053 made his disqualification automatic. The directors, however, have not met their threshold burden to establish that a writ of mandamus is proper to compel Judge Greg-

ory to disqualify himself. Requisites to mandamus relief are a showing of: (1) a legal duty to perform a nondiscretionary act; (2) a demand for performance of a nondiscretionary act; and (3) a refusal to perform after such demand was made. *Hawthorne v. La–Man Constructors, Inc.,* 672 S.W.2d 255, 258 (Tex.App.—Beaumont 1984, orig. proceeding). The directors must show that they have a clear, legal right to an order for disqualification or that they have no adequate remedy on appeal. It is axiomatic that mandamus will not lie except to compel the performance of an existing legal duty and that the writ itself cannot be the means of imposing that duty. *See Bolden v. Clapp,* 751 S.W.2d 674, 675 (Tex.App.—Tyler 1988, orig. proceeding). Likewise, the duty sought to be enforced must have already been imposed by a plain, unambiguous and positive statute and be imperatively required. *Pedroso v. DeWalt,* 340 S.W.2d 566, 568 (Tex.App.—Waco 1960, orig. proceeding), *citing Wortham v. Walker,* 133 Tex. 255, 279, 128 S.W.2d 1138, 1151 (Tex.1939). Mandamus will never issue to enforce a doubtful right, nor where the regular duty is not clear and certain. The duty, in a word, must be ministerial, one which does not involve any discretion and which leaves no alternative. *Heaton v. Bristol,* 317 S.W.2d 86, 97 (Tex.App.—Waco 1958, writ ref'd), *cert. denied and app. dism'd,* 359 U.S. 230, 79 S.Ct. 802, 3 L.Ed.2d 765 (1959).

■ We cannot say that the applicability of section 74.053 of the Texas Government Code to the appointment of a visiting judge under section 25.0022(i) is, as a matter of law, clear and certain. Section 74.053 applies only "[w]hen a judge is assigned *under this chapter.*" TEX.GOV'T CODE ANN. § 74.053(a) (Vernon 1988) (emphasis added). Section 25.0022 is, on the other hand, a section in chapter 25 of the Texas Government Code. The assignment procedures set up in chapters 25 and 74 are entirely different: the assigning judge under chapter 25 is the presiding judge of the statutory probate courts, with state-wide powers of assignment. *See, e.g.,* TEX.

GOV'T CODE ANN. § 25.0022(t) (Vernon 1988) (contemplating "a judge who is assigned to a court outside the county of the judge's residence"). In contrast, the assigning judge under chapter 74 is the presiding judge of an administrative region, whose powers of assignment are limited to that administrative region. *See, e.g.,* TEX. GOV'T CODE ANN. § 74.056(b) (Vernon 1988) (contemplating an assignment "to aid in the disposition of litigation pending in a county in the administrative region of the presiding judge who makes the request" to the presiding judge of another administrative region). In short, the Texas Government Code does not clearly and unambiguously make section 74.053 applicable to an assignment under chapter 25 of the Code; the two chapters involve different assigning officials and different procedures, and section 74.053 is limited, on its face, to chapter 74. Accordingly, because Judge Gregory was not faced with a clearcut duty imposed unambiguously by statute to disqualify himself, we find no abuse of discretion in his refusal to do so.

Thus, we grant the directors' petition for writ of mandamus only to the extent that we will direct Judge Gregory to dismiss the directors before us in this proceeding for want of subject-matter jurisdiction, with respect only to the second, third, fourth, and fifth causes of action in the administrators' third amended petition; we deny any relief with respect to the first cause of action in the administrators' third amended petition and with respect to Judge Gregory's assignment to preside or disqualification from presiding over the litigation remaining pending in the probate court.