**McALLEN STATE BANK, Relator, Appellant,**

v.

**The Honorable Homer SALINAS District Judge, 92nd Judicial District, Appellee.**

No. 13–87–316–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 29, 1987.

Max Hendrick, III, Houston, William E. Corcoran, McAllen, for appellant.

Thomas J. Sims, J. Wayne Morrison, Houston, Tom Fleming, Brownsville, Ramon Garcia, Edinburg, John E. Lewis, McAllen, for appellee.

Before NYE, C.J., and SEERDEN and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

In this original mandamus proceeding relator seeks to have this Court issue a writ of mandamus directing respondent to rescind two protective orders and to grant relator's motion to compel discovery. The trial court's orders prohibited discovery of certain evidentiary matters allegedly needed in the prosecution of plaintiff's case and in the defense of a counterclaim asserted by the real parties in interest. We granted the application for leave to file and after the hearing we now grant the issuance of the writ and conditionally order the writ to issue.

McAllen State Bank, the plaintiff and counterdefendant in the cause of action below, is the relator in this action. Rio Grande Bancshares, Incorporated (Bancshares) and individual defendants, the defendants and counter plaintiffs, are the real parties in interest (collectively referred to as defendants).

In 1984 Bancshares purchased all of the outstanding stock of First State Bank of Edinburg. The purchase was financed in part by a $5 million loan from relator, secured by all the outstanding stock of First State Bank. Prior to the execution of a note, incident to the loan, the individual defendants, stockholders of Bancshares, signed a letter agreement in which they promised to maintain a capital-to-assets ratio in First State Bank which would be satisfactory to all banking authorities.

According to relator's allegations, in late 1985, financial problems with First State Bank were discovered by the Texas Banking Department. A meeting with the Banking Department on February 14, 1986, resulted in changes in management of the bank. The Banking Department required First State Bank to submit a plan on how to meet a minimum satisfactory level of capital. Another meeting was held in May of 1986, which included federal and state regulators. Apparently, in response to this meeting, relator notified Bancshares of its acceleration of the indebtedness, and its demand for payment in full of the $5 million loan. On May 23, 1986, First State Bank was closed by the banking authorities.

Relator then filed suit for collection of the note and for breach of the agreement to maintain capital ratios by the individual stockholders of Bancshares. In September of 1986, during a deposition, Rupert Richards, one of the individual stockholders in Bancshares and a defendant in relator's suit, asserted his right to refuse discovery based on a claim of privileged communications with banking officials.

Defendants then filed a motion for a protective order with the Honorable Homer Salinas, Judge of the 92nd District Court, asserting that the information and documents requested were privileged under Tex.Rev.Civ.Stat.Ann. art. 342–210 (Vernon Supp.1987)[1] and therefore not subject to discovery. The motion was heard the next day and respondent issued the first protective order. This order prohibited discovery of the following items:

(1) Information obtained by or furnished to the Banking Department;

(2) Communications, oral or written, between the Banking Department and First State Bank, or Bancshares; and

(3) Records and documents of any nature regarding paragraphs one and two.

In March of 1987 defendants filed a first amended answer and counter-claim. In its counter-claim, Bancshares and the individual stockholders alleged that the capital maintenance agreement, which relator contends provides for the personal liability of the individual stockholders of Bancshares, was not the standard practice in interbank

---

1. This statute has since been amended by Act of June 19, 1987, ch. 973, § 1, 1987 Tex.Sess.Law Serv. 6630 (Vernon), which provides in pertinent part:

[A]ll information obtained, <u>either directly or indirectly,</u> by the Banking Department relative to the financial condition of <u>any bank or bank holding company</u> (state banks) other than call reports and profit and loss statements, whether obtained through examina- tion or otherwise, except published state- ments, and all files and records of said De- partment relative thereto shall be confiden- tial, and shall not be disclosed by the Com- missioner or any officer or employee of said Department.

(The underlined portions represent the addi- tions and the parenthesis the deletions created by the amendment.)

loans made by relator, in contravention of relator's promise to First State Bank that it would use standard loan practices. The answer and the counter-claim also alleged that relator fraudulently hid this fact from the defendants. Eventually, as First State Bank's problems worsened, relator cut off customary short term loans. Bancshare's causes of action were breach of a duty of good faith, wrongful acceleration of the note, fraud, violation of the DTPA, and interference with business relations between Bancshares and the individual defendant stockholders.

As discovery continued, relator attempted to acquire information during depositions of the defendants regarding the management and internal practices followed by First State Bank. The defendants refused to disclose this information. Relator also sought production of minutes of the board of directors of First State Bank from January 1983 to May 1986. In response to these discovery attempts, defendants filed a motion for a second protective order. Defendants claimed that questions relating to the internal management of First State Bank were not relevant to the case and that to permit this discovery would be unnecessarily burdensome. Defendants also asserted that the minutes of the board of directors of First State Bank were privileged under Article 342–210, and that they were not relevant because they contained, almost exclusively, information concerning internal management.

Thereafter, relator filed a motion requesting the court to compel discovery and to reconsider the first protective order. Relator alleged that information regarding the internal management of First State Bank was relevant in that it could lead to discovery of the true cause of the bank's failure. This information would thereby rebut defendants' allegation that relator's failure to provide loans caused the bank's failure. Relator also alleged that the information sought was relevant to their cause of action; specifically, it was relevant on whether the agreement to maintain capital ratios was breached.

Again, a hearing was held after which respondent granted a second protective order preventing discovery by relator of the following:

    (1) All information relating to the internal management of First State Bank;

    (2) The minutes of the meetings of First State Bank's board of directors; and

    (3) Anything related to paragraphs one and two.

Relator now seeks by writ of mandamus to set aside both protective orders and to grant its motion to compel discovery. Relator alleges that the trial court's actions were a clear abuse of discretion in that the proper procedural standards were not met, that the information sought was clearly discoverable ("relevant"), and that the trial judge misinterpreted article 342–210.

■ Mandamus will not issue unless relator shows a clear abuse of discretion and there is no adequate remedy by appeal. *Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex.1987). A writ of mandamus may issue in a discovery proceeding to correct a clear abuse of discretion by a trial judge. *Allen v. Humphreys*, 559 S.W.2d 798, 801 (Tex. 1977). This is because of the difficulty in determining harm on appeal, and because of judicial economy. *Jampole v. Touchy*, 673 S.W.2d 569, 576 (Tex.1984).

■ Generally, information will be discoverable if it is reasonably calculated to lead to the discovery of material evidence. However, this broad rule is limited by the rule that the trial court may protect a party from unduly burdensome or expensive discovery, from harassment or annoyance, and from discovery of privileged matters. *Jampole*, 673 S.W.2d at 573; *Gordon v. Blackmon*, 675 S.W.2d 790, 793 (Tex.App. —Corpus Christi 1984) (original proceeding); Tex.R.Civ.P. 166b(2)(a), 166b(4).

■ Of primary importance in this type of discovery process is that any party who seeks to exclude documents or other evidence from discovery has the affirmative duty to specifically plead the particular privilege, immunity, or exclusion claimed; to request a hearing; and to produce evidence substantiating the claim. The trial court at this stage of the proceeding should then determine whether an *in camera* in-

spection is necessary. *Peeples v. Fourth Supreme Judicial District,* 701 S.W.2d 635, 637 (Tex.1985).[2] This burden to produce evidence is an onerous one and is squarely and solely on the shoulders of the party seeking to prevent the discovery. *See Medical Protective Co. v. Glanz,* 721 S.W.2d 382 (Tex.App.—Corpus Christi 1986, writ ref'd); *Western Casualty and Surety Co. v. Spears,* 730 S.W.2d 821 (Tex. App.—San Antonio 1987) (original proceeding); *Teran v. Longoria,* 703 S.W.2d 300 (Tex.App.—Corpus Christi 1985) (original proceeding). It is an abuse of discretion for the trial court to deny discovery when no evidence is presented substantiating the exclusion or privilege claimed. *Weisel,* 718 S.W.2d at 58.

The record in this cause indicates there was no evidence before the court to establish the claimed privilege and exclusions.

■ The first protective order was sought solely on the basis that the information requested was privileged under article 342–210. This statute provided in part, "all information obtained by the Banking Department relative to the financial condition of state banks ... shall be confidential, and shall not be disclosed by the Commissioner or any officer or employee of said Department." The existence and scope of this claimed privilege is not well-defined in Texas case law. However, privileges are not favored in the law and are to be strictly construed. *Jordan v. Court of Appeals for the Fourth Supreme Judicial District,* 701 S.W.2d 644, 647 (Tex.1985). Even if this statute were to support the claimed privilege, there was no evidence that the information was "obtained by the Banking Department" and that it was related "to the financial condition of a state bank." During the hearing the judge heard oral arguments by counsel, looked at copies of the statute, copies of cases dealing with the statute and a form or document issued by the Federal Deposit Insurance Corporation. However, there is no indication in the

record before us that the judge reviewed any documents, records, or heard any live testimony regarding the applicability of the claimed privilege to the information requested.

Therefore, the proper procedure was not followed in the trial court. The defendants failed to produce evidence supporting the applicability of the purported privilege to the documents and communications.

■ The second protective order was requested on the grounds that information concerning the internal management was not relevant and that providing this information would be unduly burdensome to produce. It was also claimed that the minutes were privileged and not relevant.

There was no evidence presented that information concerning the internal management was not relevant and how discovery would be unduly burdensome. No live testimony, affidavits or documents were presented to the court substantiating these claims.

■ Regarding the minutes, there again was no evidence or proof to substantiate the conclusory allegations of Bancshares motion for protective order. There was no live testimony or affidavits, however, certain documents were tendered to the trial court as an exhibit. These documents purportedly were the board minutes and were alleged to be *part* of what the relator was seeking. They were tendered to the court for an *in camera* inspection. It does not appear that the documents were segregated according to the privilege or immunity claimed.

There is no indication in the statement of facts or in the record that the judge conducted an *in camera* inspection. Traditionally, the term *"in camera"* implies that the judge inspects documents in his chambers before a ruling. The judge heard oral arguments throughout the hearing and then ruled on the protective order. No recess was called during the hearing. The trial

---

2. This is so whether the objection is on the grounds of privilege, relevancy or harassment. *See Weisel Enterprises, Inc. v. Curry,* 718 S.W.2d 56, 58 (Tex.1986); *Independent Insulating*

*Glass/Southwest v. Street,* 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987) (original proceeding).

court's order does not reflect that he considered the documents or reviewed them *in camera* before making his ruling.

Since it appears no *in camera* inspection took place, and no other evidence was produced by the defendants, the trial judge abused his discretion in denying discovery.

Based on relator's argument that the protective orders were granted without the proper procedure being followed, we conditionally grant the writ and hold that the trial court's granting of the protective orders and refusal to grant relator's motion to compel discovery was clearly an abuse of discretion. We are confident that the Honorable Homer Salinas, Judge of the 92nd District Court, will abide by our decision. A writ of mandamus will issue only if he fails to do so.