QWEST MICROWAVE, INC., et al., Relators,

v.

Honorable Bill BEDARD, Judge Probate Court No. 3 of Dallas County, Texas, et al., Respondents.

No. 05–88–00634–CV.

Court of Appeals of Texas, Dallas.

Aug. 11, 1988.

Rehearing Denied Sept. 19, 1988.

Frank Finn, Timothy R. McCormick, John E. Sullivan, Dallas, Debora Beck McWilliams, Austin, for Qwest Microwave.

Michael Byrd, Kenneth T. Horton, Dallas, for General Elec. Credit.

Walter Workman, S. Stacy Eastland, Robert M. Weylandt, Houston, for River Oaks Trust Co., Co–Administrators.

William H. Pool, Dallas, for respondent Judge Bedard.

Mike Driscoll, David H. Miller, Billy E. Lee, Houston, for respondent Judge Gregory.

James J. Hartnett, Dallas, for Co–Administrator R. Clay Underwood.

Before WHITHAM, STEWART and LAGARDE, JJ.

WHITHAM, Justice.

Relators Qwest Microwave, Inc., and Qwest Microwave II, Inc. (collectively "the two Qwest corporations"), seek a writ of mandamus to compel the presiding judge of Probate Court No. 3 of Dallas County, Texas, to dismiss certain litigation for want of subject-matter jurisdiction; alternatively, they seek a writ of mandamus to compel the Honorable Kenneth Pat Gregory, the presiding judge of the statutory probate courts of Texas, to vacate an order assigning himself as a visiting judge to preside

over that litigation. For the reasons given below, we conclude that the probate court lacks subject-matter jurisdiction over the causes of action in the underlying litigation asserted against the two Qwest corporations and General Electric Credit Corporation ("General Electric"), a real party in interest that has joined in the petition for writ of mandamus of the two Qwest corporations and has aligned itself with them. We expressly do not concern ourselves here with the general administration of the estate of Dorothy J. Warren, deceased, or with any other litigation incident to the estate, or with any cause of action asserted against any party other than the two Qwest corporations and General Electric. Consequently, we conditionally grant the two Qwest corporations' petition for writ of mandamus and command that the Honorable Bill Bedard, the duly elected judge of the Probate Court No. 3 of Dallas County, Texas, and Judge Gregory each sign an order of dismissal for want of jurisdiction as to the two Qwest corporations and General Electric and cause that order to be entered in the minutes of the Probate Court No. 3 of Dallas County, Texas. For the reasons that follow, we further conclude that we need not reach the merits of the grounds of any challenges to the assignment of Judge Gregory as a visiting judge of the Probate Court No. 3 of Dallas County, Texas. Accordingly, we deny the remaining relief requested in the two Qwest corporations' petition.

## I

### Background: Posture of this Case

On May 27, 1983, Dorothy J. Warren died, leaving an estate with several million dollars' worth of assets and claims against it. Warren, her brother DeVere E. Galland, and her alleged confidante and financial advisor, Harold J. Erbs, had organized the two Qwest corporations to develop a microwave telecommunications network. The three agreed that they would, among themselves, retain the majority of the shares of the two Qwest corporations, although some shares were publicly sold. Warren all by herself was a minority shareholder. There were plans, which Warren allegedly approved before her death, to develop additional corporations to expand the telecommunications network. On Warren's death, Erbs, who was named in her will as independent executor of her estate, was appointed a temporary administrator of the estate. In December 1983,[1] Erbs was removed as an administrator of the estate and its administration was converted into a dependent administration. R. Clay Underwood and River Oaks Trust Company, the real parties in interest in this proceeding, were named as dependent co-administrators (collectively "the administrators").

Meanwhile, Erbs and Galland continued with the plan to set up yet more corporations to expand the telecommunications network. At least five new corporations, Qwest Microwave III, Inc., Qwest Microwave IV, Inc., Qwest Microwave V, Inc., Qwest Microwave VI, Inc., and Qwest Microwave VII, Inc. (collectively "the five new Qwest corporations"), were formed; the directors of all seven Qwest corporations were the same individuals. Allegedly, Warren's estate was given no opportunity to invest in shares of the five new Qwest corporations. The administrators contend, however, that certain assets of the two Qwest corporations in which Warren was a shareholder were pledged as collateral to General Electric to secure a loan exceeding eighty million dollars. The administrators concluded that the shares of the two Qwest corporations in Warren's estate had their value diluted as a result of

---

1. This information is given only in the response and joinder of real party in interest General Electric, who has allied itself with the Qwest corporations. The response actually states that Erbs was removed as a temporary administrator in December 1984, and no one has controverted this date or provided us with any court order removing Erbs as administrator. However, the estate's present administrators, the real parties in interest to this proceeding, filed suit against Erbs originally in 1983. Therefore, Erbs must have been removed as administrator, and the present administrators appointed, sometime in 1983. Accordingly, we conclude that Erbs was actually removed as administrator in December of 1983 and that General Electric Credit Corporation's response and joinder contains a typographical error.

the financial transactions implemented to establish the five new Qwest corporations. As a result, they sued the five new Qwest corporations, the individual directors, including Erbs, and General Electric. The suit was docketed under cause number 83–2091–P3(I), styled *R. Clay Underwood, et al., v. Qwest Microwave, Inc., et al.*, in the Probate Court No. 3 of Dallas County, Texas.

On July 18, 1986, the administrators filed their second amended original petition. That petition was filed expressly "for the benefit of QWEST MICROWAVE, INC.... and QWEST MICROWAVE II," who were also named as nominal defendants. The petition asserted three causes of action, the first of which contained two subparts: (1) a claim: (a) that the individual directors and General Electric worked together to breach the fiduciary duties owed by the individual directors to the two Qwest corporations and to misappropriate the assets of the two Qwest corporations; and (b) that the individual directors deprived the minority shareholders of their cumulative voting and preemptive rights in an effort to gain unlawful control over the two Qwest corporations; (2) a claim for punitive damages because of the alleged breach of those fiduciary duties; and (3) a claim based upon misappropriated assets of the two Qwest corporations, money value for the use of those assets, unjust enrichment, and lost business opportunities that allegedly should have belonged to the two Qwest corporations, along with a prayer for an accounting.

All the defendants answered the second amended original petition with a general denial, subject to a plea to the jurisdiction of the probate court and a motion to dismiss for want of subject-matter jurisdiction. They argued that the administrators' causes of action were actually shareholders' derivative actions on behalf of the two Qwest corporations and that, while Warren's estate might have had an indirect interest in the actions, the actions were not "incident" to the estate so as to confer jurisdiction upon the probate court. After a hearing, the probate court denied the motions to dismiss by an order dated January 13, 1987. At that time, the judge presiding over the case was Judge Bedard. The order expressly found that the causes of action asserted by the administrators were "not matters incident to or appertaining to an estate," but concluded that, because they were causes of action brought by the administrators as representatives of the estate, the Texas Probate Code conferred jurisdiction upon the probate court to hear the matter. Accordingly, the motions to dismiss were denied.

On September 23, 1987, after the motions to dismiss were denied, the administrators filed their third amended original petition. That petition, which remains the "live" pleading in the probate court, asserted five causes of action. The last four were again brought on behalf of the two Qwest corporations and made substantially the same allegations that were contained in the three causes of action asserted in the second amended original petition; what had been the first cause of action in the second amended original petition was split into the second and third causes of action in the third amended original petition. The second amended original petition's second and third causes of action became the fourth and fifth causes of action, respectively, in the third amended original petition.

The first cause of action was brought in the name of Warren's estate itself. It asserted that Erbs was personally liable to the estate and that the five new Qwest corporations (but not the two Qwest corporations that are relators here) and the individual directors were also liable to the estate because of their acquiescence in, imputed knowledge of, and unjust enrichments and benefits from, Erbs's actions. The paragraph from that cause of action asserting Erbs's liability will be quoted in full:

F. Harold J. Erbs is liable to the Estate (a) for dilution of the Estate's interests in Qwest I and Qwest II as a result of (i) issuing additional shares to get financing for his new Qwest companies, (ii) clouding preemptive rights, (iii) clouding cumulative voting rights, (iv) setting limits on dividends, and (v) wasting corporate

assets in appropriating their credit, know-how, goodwill, personnel and facilities for the benefit of Erbs' self-dealing corporations, (b) for the value of the investment opportunities he took away from estate assets and appropriated for his self-interest, (c) for exposing Qwest I and Qwest II to being liable for 80 million dollars debt to [General Electric] which primarily benefits the self-dealing of Erbs, (d) for exemplary, or punitive, damages because of his reckless disregard of his fiduciary capacity to the Estate and his flagrant breaches of trust, and (e) for an accounting of the interest he acquired, and profits he received at the expense of the Estate, including those from Qwest III, Qwest IV, Qwest V, Qwest VI, Qwest VII, Qwest Properties and Qwest Management [two additional affiliated corporations, whose relationship to the others is not entirely clear], by way of dividends, compensation, bonuses, pension, insurance, and benefits of any kind; in the alternative, to the Estate as beneficiary of assets which he holds, and has heretofore received, as constructive trustee.

Thus, the first cause of action, the only cause brought in the name of the estate, made general allegations only that Erbs was liable because of his own purportedly tortious acts toward the estate, and that certain other parties were vicariously liable because of their acquiescence in Erbs' actions. The two Qwest corporations and General Electric, however, were not named as parties allegedly liable under the first cause of action. No party named in the first cause of action—neither Erbs himself nor any of the parties allegedly vicariously liable because of Erbs's actions—has appeared as a party to this original proceeding.

Subsequently, Judge Bedard asked Judge Gregory, the presiding judge of the statutory probate courts (which include Probate Court No. 3), to assign a visiting judge to preside over the case. On March 28, 1988, Judge Gregory, acting in his capacity as presiding judge and purportedly pursuant to section 25.0022(i) of the Texas Government Code, assigned himself to preside over the case. Before Judge Gregory conducted any hearing in the case, the two Qwest corporations and General Electric filed objections to his self-assignment, asserting that Judge Gregory was automatically disqualified by operation of section 74.053 of the Texas Government Code. Judge Gregory held that that section did not apply to an assignment made pursuant to section 25.0022(i) and, on May 19, 1988, overruled the objections to his assignment. This proceeding followed, in which the Qwest corporations and General Electric argue that: (1) the probate court lacks subject-matter jurisdiction over the claims asserted by the administrators; and, (2) in any case, if the probate court does have jurisdiction over the administrators' claims, Judge Gregory himself is disqualified to proceed in the case.

## II

### *Mandamus as the Remedy*

█ A threshold inquiry is whether mandamus is an appropriate vehicle to collaterally attack an order overruling a plea to the jurisdiction, when there is, ultimately, a remedy on appeal after a final judgment. An order overruling a plea to the trial court's jurisdiction is an interlocutory order from which an appeal will not lie until there is a final judgment. *Grounds v. Lett,* 718 S.W.2d 38, 39 (Tex.App.—Dallas 1986, no writ). It is clear that mandamus can be used to compel a trial court to set aside an order entered after the time period of the court's plenary jurisdiction has expired. *McCormack v. Guillot,* 597 S.W.2d 345, 346–47 (Tex.1980). Yet timeliness is a question that can be determined by a simple clerical calculation. *See, e.g.,* TEX.R. APP.P. 56 (an appellate court clerk can refuse to file a transcript or a statement of facts, subject to court review, if the clerk determines that the transcript or the statement of facts has been tendered after the jurisdictional time limit). In the present case, the question of the probate court's jurisdiction cannot be resolved by a simple clerical calculation. Rather, the attack on the probate court's jurisdiction involves the subject matter of the case, that is, the

legislative grant to the probate court to hear the kind of claims that the administrators have placed before it. Therefore, the probate court was compelled to perform an act of adjudication in resolving the jurisdictional question. Assuming for the present, without deciding, that the probate court's determination that it had jurisdiction over the case was erroneous, the question is whether such an error can be corrected by way of a mandamus proceeding or whether such a correction must await an appeal from a final judgment.

In *Fulton v. Finch*, 162 Tex. 351, 346 S.W.2d 823, 827 (1961), the Supreme Court of Texas acknowledged that:

> There seemingly is no case holding that because a void judgment may be so declared on appeal the statutory remedy of mandamus provided for by Articles 1734 and 1824, Vernon's Ann.Tex.Civ.Stats. [now TEX.GOV'T CODE ANN. § 22.221 (Vernon 1988)] is unavailable.

The *Fulton* Court then proceeded to conditionally grant a writ of mandamus to compel the trial court to vacate an order that the trial court had had no jurisdiction to enter, observing that:

> It is one thing to say that a void order *may* be appealed from but it is another thing to say that it *must* be appealed from for it would be anomalous to say that an order void upon its face must be appealed from before it can be treated as a nullity and disregarded. An order which must be appealed from before it is ignored can hardly be characterized as "void" and binding on no one.

346 S.W.2d at 830 (emphasis original). Although the rationale of the *Fulton* Court makes no explicit distinction between an order that is void because of its untimeliness and an order that is void because the trial court otherwise lacked jurisdiction to enter it, *Fulton* did involve an attempt by the trial court to set aside a timely order granting a new trial, after the time for the trial court to do so had lapsed. Therefore, we do not read *Fulton* as holding that mandamus may be used to collaterally attack an order that might be void for any reason whatsoever, specifically, void because of lack of subject-matter jurisdiction.

Despite the comment in *Fulton* that there appeared to be no authority expressly holding that an available appeal does not preclude the use of mandamus to collaterally attack a void order, the Supreme Court has conditionally granted a writ of mandamus to compel a trial court to vacate an order that exceeded its subject-matter jurisdiction. In *State v. Ferguson*, 133 Tex. 60, 125 S.W.2d 272 (1939), the trial court entered a temporary restraining order restraining state officials from halting, detaining, or weighing trucks possibly violating statutory weight limits, without a search warrant or warrant of arrest. 125 S.W.2d at 275. The Supreme Court concluded that the trial court lacked jurisdiction to supervise and direct the manner and method of a statute's enforcement by the officers of the executive department of government charged with the duty of enforcing the statute. Such supervision, the Court explained, was in violation of article 1, section 28, of the Texas Constitution. 125 S.W.2d at 276. It held that a writ of mandamus will lie to correct an order which a trial court has no power to enter and which is, therefore, void. 125 S.W.2d at 274. Accordingly, it conditionally granted a writ of mandamus. 125 S.W.2d at 277. The Supreme Court did so, notwithstanding the fact that the State (arguing that the trial court's temporary restraining order was actually a temporary injunction) had already brought an appeal of the trial court's order. *See* 125 S.W.2d at 274. The Supreme Court stated simply that "[t]he fact that application has heretofore been made to the Court of Civil Appeals for relief has no effect on our jurisdiction [to issue a writ of mandamus]." 125 S.W.2d at 274 (citations omitted). Therefore, *State v. Ferguson* involved a trial court exceeding its subject-matter jurisdiction by entering an order that it was constitutionally prohibited from entering; the fact that an appeal from the very same order was being attempted was irrelevant to the *Ferguson* Court. The *Ferguson* Court acted in part, however, because the jurisdictional question involved with the trial court's order

was "of general public interest, affecting every court and litigant in this state." 125 S.W.2d at 274. Its holding might therefore be limited to the facts of that particular case and we might be hesitant to extend it if *Ferguson* were the only authority guiding us.

Yet the Supreme Court has conditionally granted a writ of mandamus in two other cases in which the trial court lacked subject-matter jurisdiction to enter the orders attacked: *State Board of Insurance v. Betts,* 158 Tex. 612, 315 S.W.2d 279 (1958) (the trial court had no statutory authority to appoint a receiver for certain insurance companies in liquidation); and *State v. Gary,* 163 Tex. 565, 359 S.W.2d 456 (1962) (the trial court had no authority to reinstate a cause of action that the plaintiff had voluntarily dismissed after the plaintiff had filed the same cause of action in another coordinate court; the Supreme Court expressly noted that "[a] legal question as to the jurisdiction of courts [was] involved" in the mandamus proceeding before it, 359 S.W.2d at 457). In *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916 (Tex. 1985), the Supreme Court acknowledged that mandamus will not lie for "[a] mere error of judgment." 700 S.W.2d at 918. It also said, however, that when the facts and the law permit the trial court to make but one decision, then the facts and the circumstances of the case "extinguish any discretion in the matter." 700 S.W.2d at 918. In such a case, mandamus might lie.

Although our Supreme Court may never have expressly held that mandamus will lie to compel a trial court to vacate an order for which it lacks subject-matter jurisdiction, it has, in fact, acted accordingly. Meanwhile, the Court of Appeals for the Fourteenth District of Texas has expressly addressed that very question. *Allen v. Tennant,* 678 S.W.2d 743 (Tex.App.—Houston [14th Dist.] 1984, orig. proceeding). In *Allen,* a judgment creditor who had obtained a foreign judgment attempted to domesticate that judgment in Texas. 678 S.W.2d at 743–44. No notice was sent to the judgment debtors, however, as required by the predecessor statutes to sections 35.004, 35.005, and 36.004 of the Texas Civil

Practice and Remedies Code. 678 S.W.2d at 744. Instead, the trial court simply domesticated the foreign judgment and, over a month later, the judgment creditor attempted execution. 678 S.W.2d at 744. The judgment debtors then filed a petition for writ of mandamus with the Fourteenth Court.

In *Allen,* the judgment creditor argued that the judgment debtors were limited to attacking the domesticated judgment by bill of review. The Fourteenth Court rejected that argument, saying:

> [The judgment creditor] contends that [the judgment debtors'] remedy is limited to a bill of review, citing *McEwen v. Harrison,* 162 Tex. 125, 345 S.W.2d 706 (1961). In that case, the Texas Supreme Court held that *when the judgment was issued by a court having jurisdictional power to render it,* the exclusive methods to set aside the two month old default judgment were writ of error or bill of review. *Id.* 345 S.W.2d at 710 (emphasis added). In the instant case [the judgment debtors] are not so limited in remedy. Although the statute provides that the foreign judgment has the same effect as a judgment of the court in which it is filed, it has that effect, and the court has jurisdiction to enforce the judgment, only when the creditor complies with the statutory requirements. The statutory requirement of proof of notice to the debtor that the foreign judgment was filed has not been met, therefore [the judgment creditor] was without power to enforce the foreign judgment and all orders pertaining thereto should be set aside as void.

678 S.W.2d at 744. Thus, the Fourteenth Court expressly concluded that mandamus is an appropriate vehicle to collaterally attack a judgment that is void because of the trial court's lack of subject-matter jurisdiction, notwithstanding the availability of review by appeal. *See also W.W. Rodgers & Sons Produce Co. v. Johnson,* 673 S.W.2d 291, 295 (Tex.App.—Dallas 1984, orig. proceeding) (mandamus would issue if the trial court had no authority to enter an order, so that it lacked discretion to act in any way

but one); *Stewart Title Co. v. Street,* 731 S.W.2d 737 (Tex.App.—Fort Worth 1987, orig. proceeding) (mandamus would issue to compel vacation of the trial court's order entered when a removal to bankruptcy court had deprived it of jurisdiction); *City of Houston v. Farris,* 695 S.W.2d 780, 782 (Tex.App.—Houston [14th Dist.] 1985, orig. proceeding) (mandamus would lie against a court order exceeding the court's statutory authority by requiring a defendant to post security for costs); *Aztec Life Insurance Co. of Texas v. Dellana,* 667 S.W.2d 911, 914 (Tex.App.—Austin 1984, orig. proceeding) (holding that "[a]n order is deemed void when rendered by a court having no jurisdiction or authority, ... as when the order is violative of some constitutional right of a party, or when it is rendered as a result of an abuse of discretion by a judicial officer," 667 S.W.2d at 914 (citations omitted), so that mandamus will lie).

This Court has previously held that an order entered after failing to take proper procedural steps mandated by statute is a void order, for which mandamus will lie. *See Hennessy v. Marshall,* 682 S.W.2d 340, 345 (Tex.App.—Dallas 1984, orig. proceeding) (an order compelling postjudgment discovery was void and subject to mandamus because it was predicated on the recognition and enforceability of a foreign judgment, although the trial court did not comply with the statutory procedures required to recognize and enforce a foreign judgment). The courts of appeals have conditionally granted writs of mandamus against trial courts that have not followed procedures required by law, *e.g., Texas Utilities Electric Co. v. Marshall,* 739 S.W.2d 665, 667 (Tex.App.—Dallas 1987, orig. proceeding) (the trial court failed to conduct an *in camera* inspection of certain documents in a discovery dispute in violation of *Peeples v. Honorable Fourth Supreme Judicial District,* 701 S.W.2d 635, 637 (Tex.1985)). Such a grant of mandamus is made even when a trial court has subject-matter jurisdiction to enter an order that is identical to the one that it did enter and would have been unassailable had the proper procedural steps been taken. *See, e.g., Texas Utilities Electric Co.,*

739 S.W.2d at 667 (this Court expressly reserved ruling on the merits of the parties' discovery dispute).

We recognize that a void order resulting from a court's failure to take legally mandated procedural steps can be distinguished from a void order resulting from a court's exceeding its statutory authority, that is, a void order resulting from the court's acting outside its subject-matter jurisdiction. Mandamus has traditionally been employed to compel a court to perform a duty clearly imposed by law in circumstances in which the question of subject-matter jurisdiction itself does not arise. *See, e.g., Greenberg, Fisk & Fielder v. Howell,* 676 S.W.2d 431, 432–33 (Tex.App.—Dallas 1984, orig. proceeding). Nonetheless, if mandamus lies when a court has the statutorily granted authority to enter a certain order but simply fails to follow the legally mandated means by which that order must be entered, it would be anomalous to hold that mandamus does not lie when a court enters an order that altogether exceeds its statutorily granted authority.

We are not to be understood as saying that *any* ruling in which a trial court asserts jurisdiction is necessarily subject to review by way of mandamus. The jurisdiction of a court can hinge upon a fact, and that fact can be disputed. If a trial court's jurisdiction depends upon that court's finding of a disputed fact, mandamus may not lie because an appellate court may not deal with disputed areas of fact in a mandamus proceeding. *Texas Utilities Electric Co.,* 739 S.W.2d at 667. One authority succinctly makes the distinction:

> Where there are questions of fact, or mixed questions of law and fact, upon which the right to assume jurisdiction depends and upon which it is the duty of the court to pass judicially, then there is jurisdiction to decide those questions, and if that discretion is erroneously exercised, it can be corrected only by appeal or error, and not by mandamus. A different situation is presented where the want of jurisdiction appears affirmatively on the face of the record, or is otherwise clear as a matter of law. In such a

case, the writ of mandamus will issue to remedy an unauthorized assumption of jurisdiction.

52 Am.Jur.2d *Mandamus* § 312 (1970) (footnotes omitted). We hold, therefore, that, when a trial court erroneously concludes that, solely as a matter of law, it has subject-matter jurisdiction over a given cause and enters an order accordingly, that order is void and subject to this Court's review by way of mandamus.

 The administrators rely upon *Grounds v. Lett*, 718 S.W.2d 38, 39 (Tex. App.—Dallas 1986, no writ), for the proposition-that an order overruling a plea to the jurisdiction is an interlocutory order from which an appeal will not lie. Nothing in our holding here is to the contrary. *Grounds* held merely that an interlocutory order, unless otherwise provided by statute, could not be appealed until it was merged in a final judgment; it did not say that an appeal after a final judgment in which the trial court erroneously asserted jurisdiction was, in all cases, the exclusive means of review. The administrators also point out that suit was originally filed in 1983, but the probate court's subject-matter jurisdiction was challenged for the first time only in 1987 and challenged in this proceeding apparently only as an afterthought to the two Qwest corporations' main complaint, the refusal of Judge Gregory to disqualify himself. Neither contention is relevant. Subject-matter jurisdiction, dependent upon a legislative grant of authority to the courts, cannot be waived: either a court has such jurisdiction or it does not. *See generally Bayoud v. North Central Investment Corp.*, 751 S.W.2d 525, 528–29 (Tex.App.—Dallas 1988, writ pending); *Southwestern Bell Telephone Co. v. City of Kountze*, 543 S.W.2d 871, 873–74 (Tex.Civ.App.—Beaumont 1976, no writ). A challenge to a trial court's jurisdiction may be brought at any time, even if it is brought for the first time on appeal. *Orr v. International Bank of Commerce*, 649 S.W.2d 769, 771 (Tex.App.—San Antonio 1983, no writ). The two Qwest Corporations and General Electric have placed the question of the probate court's subject-matter jurisdiction squarely before us, and,

having concluded that a mandamus proceeding is appropriate to review whether the probate court made an erroneous conclusion of law when it asserted subject-matter jurisdiction, we now turn to a consideration of the merits of the jurisdictional question itself.

## III

### *The Probate Court did not have Jurisdiction*

#### A

### *The Jurisdictional Question was a Matter of Law*

 At the time that the probate court entered its January 13, 1987 order overruling the motions to dismiss of the two Qwest corporations and General Electric, the administrators' second amended original petition was the "live" pleading asserting the administrators' causes of action. Accordingly, we must first address whether the second amended original petition sufficiently states any cause of action that vested the probate court with jurisdiction to hear the case. We reserve until later the effect of the administrators' amending their petition subsequent to the probate court's ruling that it had jurisdiction over the case.

The legislative grant of authority to the statutory probate courts is given in the Texas Probate Code:

All courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate. When a surety is called on to perform in place of an administrator or guardian, all courts exercising original probate jurisdiction may award judgment against the personal representative in favor of his surety in the same suit.

TEX.PROB.CODE ANN. § 5(d) (Vernon 1980). This grant of authority is further defined and amplified:

In proceedings in the statutory probate courts and district courts, the phrases "appertaining to estates" and "incident to an estate" in this Code include the probate of wills, the issuance of letters

testamentary and of administration, and the determination of heirship, and also include, but are not limited to, all claims by or against an estate, all actions for trial of title to land and for the enforcement of liens thereon, all actions for trial of the right of property, all actions to construe wills, the interpretation and administration of testamentary trusts and the applying of constructive trusts, and generally all matters relating to the settlement, partition, and distribution of estates of wards and deceased persons. All statutory probate courts may, in the exercise of their jurisdiction, notwithstanding any other provisions of this Code, hear all suits, actions, and applications filed against or on behalf of any guardianship, heirship proceeding, or decedent's estate, including estates administered by an independent executor.... In situations where the jurisdiction of a statutory probate court is concurrent with that of a district court, any cause of action appertaining to estates or incident to an estate shall be brought in a statutory probate court rather than in the district court. *In actions by or against a personal representative,* or in matters involving an inter vivos trust, *the statutory probate courts have concurrent jurisdiction with the district courts.*

TEX.PROB.CODE ANN. § 5A(b) (Vernon supp.1988) (emphasis added). The emphasized language in the last sentence was added by amendment effective August 26, 1985 (the remainder of the last sentence was added by amendment effective September 1, 1987). TEX.PROB.CODE ANN. § 5A(b) (Vernon supp.1988), historical note; Act of June 15, 1985, ch. 875, § 1, 1985 Tex.Sess.Law Serv. 6429–30 (Vernon); Act of June 17, 1987, ch. 459, § 1, 1987 Tex. Sess.Law Serv. 4071–72 (Vernon). (The emphasized language shall be referred to hereafter as "the 1985 amendment.")

All the causes of action asserted in the administrators' second amended original petition were brought expressly for the benefit of the two Qwest corporations. They were, on their face, shareholders' derivative causes of action, belonging not to Warren's estate, but to the Qwest corporations themselves. *Providential Investment Corp. v. Dibrell,* 320 S.W.2d 415, 418 (Tex.Civ.App.—Houston 1959, orig. proceeding). Warren's estate could not bring those causes of action in its own right, nor could it directly prosecute the suit in the name of the two Qwest corporations. *See Gearhart Industries, Inc., v. Smith International, Inc.,* 741 F.2d 707, 721 (5th Cir. 1984) (construing Texas law).[2] Accordingly, those causes of action were not "incident" to Warren's estate, and the probate court expressly recited that the claims were "not matters incident to or appertaining to an estate" with respect to Warren's estate in its January 13, 1987 order denying the motions to dismiss.

Instead, the probate court grounded its ruling on its jurisdiction—and its order so recited—on the fact that the causes of action were "an action brought by R. Clay Underwood and River Oaks Trust Company, Co–Administrators of the Estate of Dorothy J. Warren, Deceased," that is, brought by the personal representatives of the estate. In short, the probate court relied upon the 1985 amendment for its legislative grant of authority to hear the case.[3] The interpretation of the 1985

2. We recognize that a shareholder can bring a suit in his own name from which a corporation might benefit: under TEX.BUS.CORP.ACT ANN. art. 2.04 (Vernon 1980), a shareholder may bring an action to enjoin a corporation's commission of an ultra vires act. *Gearhart Industries, Inc.,* 741 F.2d at 721 n. 8. Nonetheless, while the administrators' petitions have asserted that Erbs caused the two Qwest corporations to commit ultra vires acts, the administrators sought no injunctive relief, so that article 2.04 does not apply.

3. We note that the administrators originally brought suit in 1983, while the legislative grant of authority on which the probate court relied was bestowed only by the 1985 amendment. For purposes of this opinion, we assume, but do not decide, that the 1985 amendment was retroactively applicable to claims covered by the 1985 amendment that were already pending before the statutory probate courts. *See* Act of June 15, 1985, ch. 875, § 2, 1985 Tex.Gen.Laws 2996 ("[b]ecause [the 1985 amendment] is remedial, it applies to all cases filed ... on or after January 1, 1973"). We therefore address the

amendment is a matter of law, within the court's province to determine. *See Rothacker v. Rockwall County Central Appraisal District*, 703 S.W.2d 235, 236 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). We conclude, therefore, that the probate court's ruling that it had jurisdiction to hear the underlying litigation was entirely a matter of law, such that we may appropriately review that ruling in a mandamus proceeding.

## B
### *The Probate Court Erred in Asserting its Jurisdiction*

■ We now turn to the merits of that ruling. The 1985 amendment was the legislature's response to a Supreme Court decision, *Seay v. Hall*, 677 S.W.2d 19 (Tex. 1984). Hearings on H.B. 479 Before the Senate Jurisprudence Comm., 69th Leg., 1985 (on tape); the hearing in question was conducted on May 14, 1985, and our record contains a transcription of that hearing that has been properly authenticated by the secretary of the Texas Senate as custodian of the official records of the Senate. The *Seay* Court had held that section 5A(b) of the Texas Probate Code was not broad enough to confer jurisdiction upon the probate courts of a personal injury action brought as a survival action by a decedent's estate. 677 S.W.2d at 21–25. In what might have been dictum, the *Seay* Court explained that a personal injury action was an unliquidated claim, and its being unliquidated was possibly an indication that the legislature did not intend to confer jurisdiction over such a claim on the probate courts. 677 S.W.2d at 23. The Senate Jurisprudence Committee was concerned that that language in the *Seay* opinion might bar probate courts from hearing any disputes involving unliquidated claims, including, for example, claims for attorneys' fees for services rendered to the estate. A claim for payment for services to an estate is clearly "incident" to the estate, yet whether the probate courts could resolve such a claim was left in doubt by the *Seay* opinion.

At the same time, however, the language that was ultimately added to the 1985 amendment ("[i]n actions by or against a personal representative") caused concern because of its breadth. In this connection, the official records of the Senate described above reflect that specifically Frank Ikard, then chairman elect to the Real Estate Probate and Trust Law Section of the State Bar of Texas, expressed his fear that the language quoted would effectively grant the probate courts jurisdiction, concurrently with the district courts, over any cause of action, of whatever nature, to which a personal representative of an estate happened to be a party. He gave as an example the possibility of an antitrust suit having to be filed in a probate court. Being persuaded that that result was not the intent of the drafters, Ikard withdrew his objection to the proposed language.

We conclude, therefore, that the legislative intent in enacting the 1985 amendment, as evidenced by the hearing before the Senate Jurisprudence Committee, was simply to clarify that probate courts could hear unliquidated claims incident to an estate, and not to enable probate courts to hear any claim of any nature involving a personal representative as a party. Certainly by permitting probate courts to hear claims brought by a personal representative, the legislature at least intended that such claims would belong to the personal representative in his capacity of personal representative and not in any other capacity. We conclude further that the legislature did not statutorily overrule the main holding of the *Seay* opinion, that "the legislature did not intend to expand probate court jurisdiction to matters other than those in which the controlling issue was the settlement, partition, or distribution of an estate." 677 S.W.2d at 22. *See Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 634 n. 1 (Tex.1986) (a district court remains a proper forum for survival actions after the 1985 amendment). We hold, therefore, that the 1985 amendment to section 5A(b) of the Texas Probate Code conferred jurisdiction upon the probate courts to hear claims that might not be fully liquidated but that nonetheless are brought by a per-

question whether the administrators' claims

were claims so covered by the 1985 amendment.

sonal representative in his capacity of personal representative administering an estate.

█ The administrators' second amended original petition in the underlying litigation asserted causes of action that were expressly for the benefit of the two Qwest corporations, that is, shareholders' derivative actions. The standing of the administrators to bring such actions arose, not simply because they were the administrators of Warren's estate, but also because Warren's estate was itself a holder of shares in the two Qwest corporations. In legal effect, the administrators themselves held the shares of the two Qwest corporations in trust. *See* TEX.PROB.CODE ANN. § 37 (Vernon supp.1988); *Humane Society of Austin and Travis County v. Austin National Bank*, 531 S.W.2d 574, 577 (Tex.1975), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). Their capacity as shareholders, in trust, of the two Qwest corporations was the capacity that enabled them to assert their causes of action in the second amended petition. We conclude, therefore, that section 5A(b) of the Texas Probate Code does not confer jurisdiction upon a probate court to hear claims brought by the administrators in their capacity as shareholders and therefore nominal plaintiffs in a derivative action. We conclude further that Judge Bedard's January 13, 1987 ruling on the motions to dismiss before him was erroneous, as a matter of law. Because the probate court exceeded the limits of its statutory authority, its order overruling the motions to dismiss was completely void, and not merely voidable. *City of Houston v. Farris*, 695 S.W.2d 780, 782 (Tex.App.—Houston [14th Dist.] 1985, orig. proceeding); *City of Lufkin v. McVicker*, 510 S.W.2d 141, 144 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.).

### C

*The Administrators did not Successfully Cure the Jurisdictional Defect by Amendment with respect to the Two Qwest Corporations and General Electric*

█ We recognize that a plaintiff's cause should not be dismissed without affording the plaintiff the right to cure the defect necessitating dismissal, if the defect can be cured. *See Atkinson v. Reid*, 625 S.W.2d 64, 66 (Tex.App.—San Antonio 1981, no writ). In this case, the administrators filed a third amended original petition on September 23, 1987. That petition asserted five causes of action, the last four of which were again brought expressly for the benefit of the two Qwest corporations, that is, as derivative actions over which we have concluded the probate court did not have jurisdiction. The first cause of action, a paragraph from which is set forth above, was brought nominally by Warren's estate itself. Yet this Court must determine the nature of the administrators' suit, as a matter of law, solely from the facts alleged in the petition, the rights asserted, and the relief sought. *Sobel v. Taylor*, 640 S.W.2d 704, 708 (Tex.App.—Houston [14th Dist.] 1982, no writ). It is clear that the first cause of action asserts only that Erbs is directly liable to the estate and that the five new Qwest corporations and the individual directors of those corporations are vicariously liable because of their acquiescence in Erbs's allegedly tortious conduct to the estate. The parties who, in this proceeding, complain of the trial court's lack of subject matter jurisdiction are nowhere named in the first cause of action. Therefore, we do not reach the question of whether the probate court has subject-matter jurisdiction generally over the first cause of action; having determined that the probate court has no subject-matter jurisdiction over the last four causes of action, because of their essential nature of shareholders' derivative action, we conclude that, in any event, the probate court lacks subject-matter jurisdiction over any claim asserted against the parties presently before this Court. We therefore do not decide, and reserve ruling on, whether the probate court has subject-matter jurisdiction over the first cause of action generally. We conclude that we need not decide whether the probate court has subject-matter jurisdiction over the administrators' first cause of action because, even if it does

have such jurisdiction, its jurisdiction over one cause of action does not vest it with jurisdiction over another cause of action over which it does not otherwise have jurisdiction. *See Seay v. Hall*, 663 S.W.2d 468, 472–73 (Tex.App.—Dallas 1983), *aff'd in part and rev'd in part on other grounds*, 677 S.W.2d 19 (Tex.1984). Having held that the probate court does not have subject-matter jurisdiction over the last four causes of action in the administrators' third amended original petition, and concluding that the two Qwest corporations and General Electric are named only in the last four causes of action, it necessarily follows, and we so hold, that the probate court does not have subject-matter jurisdiction over any cause of action asserted against the two Qwest corporations and General Electric, that is, over any cause of action with which we are concerned in this original proceeding. Whatever other effect the administrators' third amended original petition might have had, it cured nothing of any jurisdictional defect, in any material respect, as to the two Qwest corporations and General Electric. As to Erbs, the five new Qwest corporations, and their individual directors, we emphasize that they are not parties before us challenging the subject-matter jurisdiction of the probate court over any cause of action asserted against them by the administrators. We also again emphasize that Erbs, the five new Qwest corporations, and their individual directors are not parties before us challenging the assignment of Judge Gregory as the judge of the Probate Court No. 3 of Dallas County, Texas. Hence, we leave Erbs, the five new Qwest corporations, and their individual directors as we find them; litigants before Judge Gregory.

## IV

### *This Court should Direct Dismissal as the Only Course of Action*

Having concluded that the probate court lacks jurisdiction to hear at least those claims of the administrators asserted against the two Qwest corporations and General Electric, the next question is how to proceed. The two Qwest corporations,

joined by General Electric, request us to direct the probate court to transfer the administrators' claims against them to a court of appropriate jurisdiction. They cite the Texas Government Code (without directing our attention to a specific section; perhaps they allude to TEX.GOV'T CODE ANN. § 74.121 (Vernon 1988)) as authority that transfer is the appropriate remedy under the facts of this case.

We recognize that section 5A(b) of the Texas Probate Code gives concurrent jurisdiction, in certain instances, to both the statutory probate courts and the district courts. In such cases, transfer of a cause from a statutory probate court to a district court might, or might not, be statutorily authorized. We decline to address this question, however, because the gravamen of the two Qwest corporations' argument is not that the administrators' claims against them are before a court improperly exercising its concurrent jurisdiction, but that the administrators' claims against them are before a court that has no jurisdiction over them whatsoever. Having concluded that the probate court lacks jurisdiction over those claims, we also conclude that the probate court has no alternative but to dismiss those claims. *See Smith v. Texas Improvement Co.*, 570 S.W.2d 90, 92 n. 3 (Tex.Civ.App.—Dallas 1978, no writ); *Fenno v. Sam Reece Air Conditioning & Heating, Inc.*, 572 S.W.2d 810, 811 (Tex. Civ.App.—Houston [14th Dist.] 1978, no writ). A court of competent jurisdiction has no authority to act upon a request for relief made erroneously to another court lacking authority to grant that relief; *compare Fite v. Johnson*, 654 S.W.2d 51, *passim* (Tex.App.—Dallas 1983, no writ) (a court of appeals cannot grant a motion to extend the time to file a cost bond when the motion has been timely, but erroneously, filed in the trial court). Similarly, we reason that a district court, even if it had the authority to hear the administrators' claims against the two Qwest corporations and General Electric if those claims were pleaded *de novo* before that court, has no authority to hear claims that were originally pleaded before a probate court lacking

subject-matter jurisdiction. We conclude, therefore, that there is no authority that would permit the probate court to transfer the administrators' claims against the two Qwest corporations and General Electric to a district court of competent jurisdiction. Accordingly, we decline to direct—we know of no authority by which we *can* direct—the probate court to transfer the administrators' claims against the two Qwest corporations and General Electric to a district court. It follows that, if we direct the probate court to do anything at all, we must direct the probate court to take the only course of action available to it; to wit, to dismiss the administrators' claims as to the two Qwest corporations and General Electric.

 Directing the probate court to dismiss the action as to them and as to General Electric, however, is not what the two Qwest corporations have requested of us (although they requested dismissal from the probate court itself). We recognize that there is authority that, upon an appeal, a court of appeals can grant only that relief requested in a party's brief; it cannot grant relief for which no request has been made. *See Texas Federal Savings & Loan Ass'n v. Sealock*, 737 S.W.2d 870, 877 (Tex. App.—Dallas 1987), *rev'd on other grounds*, 755 S.W.2d 69 (Tex.1988); *West End API, Ltd., v. Rothpletz*, 732 S.W.2d 371, 373 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). In this case, however, we are presented, not with an appeal from a judgment by a court properly authorized to enter that judgment, but with an attack upon a lower court's order as being completely void. The invalidity of a void order may be asserted by any person whose rights are affected, at any time and at any place. *City of Lufkin v. McVicker*, 510 S.W.2d 141, 144 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.), *quoting Southern Surety Co. v. Texas Oil Clearing House*, 281 S.W. 1045, 1046 (Tex.Comm'n App. 1926, judgm't adopted). Accordingly, the two Qwest corporations and General Electric may attack the probate court's order in a subsequent original proceeding. *See Goffney v. Lowry*, 554 S.W.2d 157, 158 (Tex.1977) (the Supreme Court of Texas

has jurisdiction to direct mandamus despite the contrary action of a court of civil appeals when the relator sought mandamus relief from it). Thus, the considerations resulting in our limitations to grant only the relief requested on an appeal—judicial economy and the final resolution of a controversy—do not apply in the context of a mandamus proceeding in which a void order is attacked. Although the two Qwest corporations have not expressly requested us to direct the probate court to dismiss the administrators' claims, judicial economy will not be served by disposing of this mandamus proceeding on such a technicality, and, so long as the order is completely void and subject to attack at any time, at least as to the two Qwest corporations and General Electric, there will be no final resolution of this controversy. Mandamus is appropriate, under certain circumstances, to preserve judicial economy. *McAllen State Bank v. Salinas*, 738 S.W.2d 381, 384 (Tex.App.—Corpus Christi 1987, orig. proceeding). Particularly is this so, when to deny mandamus relief would be to compel a party to try his lawsuit, only to have that lawsuit rendered a certain nullity on appeal. *See Jampole v. Touchy*, 673 S.W.2d 569, 576 (Tex.1984). We conclude, therefore, that, to prevent unnecessary litigation and a suit certain to be held a nullity in the event of an appeal, mandamus to direct the probate court to dismiss the administrators' claims as to the two Qwest corporations and General Electric for want of jurisdiction is appropriate relief under the facts of this case.

### V

*Judge Gregory Sufficiently Reaffirmed Judge Bedard's Order such that Mandamus will Lie against Judge Gregory*

 This case comes to us in the posture in which Judge Bedard actually denied the motions to dismiss of the two Qwest corporations and of General Electric, and in which Judge Gregory now purportedly presides over the case, by virtue of his self-assignment, as a successor judge. We are

aware that Judge Gregory, as a successor judge to Judge Bedard (assuming, without deciding, that the parties' objection to Judge Gregory's self-assignment did not result in his automatic disqualification), should normally be given an opportunity to reconsider Judge Bedard's action in denying the motions to dismiss. *See, e.g., Jampole v. Touchy,* 673 S.W.2d 569, 572 (Tex. 1984). Nonetheless, Judge Gregory's action in assigning himself to the case and subsequently in overruling the objections of the two Qwest corporations and of General Electric to his self-assignment is an action affirmatively asserting the probate court's jurisdiction over the administrators' claims against them; indeed, the action would be meaningless unless Judge Gregory also believed, like Judge Bedard, that he had jurisdiction to hear those claims. Furthermore, the record before us makes it quite clear that Judge Gregory intended to try the underlying litigation, including the administrators' claims against the two Qwest corporations and General Electric, promptly. Under such circumstances, we conclude that Judge Gregory has sufficiently reaffirmed Judge Bedard's order denying the motions to dismiss for want of jurisdiction, such that mandamus will lie against him.

## VI

*Both Judges shall be Ordered to Sign an Order of Dismissal for Want of Jurisdiction*

The only remaining question presented by the two Qwest corporations concerns the objection to Judge Gregory's assignment by the two Qwest corporations and General Electric. Hence, we reach consideration of the second prong of the argument here made by the two Qwest corporations and General Electric; to wit, if the probate court does have jurisdiction over the administrators' claims, whether Judge Gregory himself is disqualified in the case. For the reasons that follow, we conclude that we need not address this question and command both Judge Bedard and Judge Gregory to sign an order of dismissal for want of jurisdiction as to the two Qwest

corporations and General Electric and cause that order to be entered in the minutes of the Probate Court No. 3 of Dallas County, Texas.

As noted earlier, a court lacking jurisdiction over a claim has no alternative but to dismiss it. *See Smith v. Texas Improvement Co.,* 570 S.W.2d 90, 92 n. 3 (Tex.Civ. App.—Dallas 1978, no writ). That is, when a court lacks subject-matter jurisdiction, dismissal is a purely ministerial act; no adjudicative act is involved. All discretion is extinguished. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985). Thus, the probate court had an absolute and rigid duty to follow a fixed and prescribed course, not involving the exercise of judgment or discretion; to wit, to dismiss the administrators' claims against the two Qwest corporations and General Electric. *See Gordon v. Blackmon,* 675 S.W. 2d 790, 793 (Tex.App.—Corpus Christi 1984, orig. proceeding).

■ Having determined that the Probate Court No. 3 of Dallas County, Texas, is without jurisdiction, at least as to the two Qwest corporations and General Electric, and that this cause as to those parties must be dismissed for want of jurisdiction, we turn to the question of who shall be commanded to sign an order of dismissal—Judge Bedard, Judge Gregory, or both. Thus, we must first decide if both Judge Bedard and Judge Gregory are proper subjects of this Court's writ of mandamus. The Honorable Bill Bedard is the only duly elected judge of the Probate Court No. 3 of Dallas County, Texas. Although a judge of a statutory probate court of Harris County, Texas, the Honorable Kenneth Pat Gregory purports to sit as the judge of the Probate Court No. 3 of Dallas County, Texas, by lawful assignment to that bench. We begin by noting that we may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against a judge of a district or county court in this court of appeals district. TEX.GOV'T CODE ANN. § 22.221(b) (Vernon 1988). The Fifth Court of Appeals District is composed of the Counties of Collin, Dallas, Grayson, Hunt, Kaufman, Rockwall, and

Van Zandt. TEX.GOV'T CODE ANN. § 22.201(f) (Vernon 1988). We conclude that the Probate Court No. 3 of Dallas County, Texas, is a county court within the meaning of section 22.221(b) of the Texas Government Code. We reach this conclusion in light of definitions found in the Texas Probate Code. "County court" and "probate court" are synonymous terms and denote county courts in the exercise of their probate jurisdiction, courts created by statute and authorized to exercise original probate jurisdiction in contested matters. TEX.PROB.CODE ANN. § 3(e) (Vernon 1980). "Court" denotes and includes both a county court in the exercise of its probate jurisdiction, a court created by statute and authorized to exercise original probate jurisdiction, or a district court exercising original probate jurisdiction in contested matters. TEX.PROB.CODE ANN. § 3(g) (Vernon 1980). Further, it is obvious that Judge Gregory, under his claim of right to sit by assignment as the judge of the Probate Court No. 3 of Dallas County, Texas, asserts that he is a judicial officer of the State of Texas serving as "a judge of a district or county court in [this] court of appeals district." It follows, therefore, for the purposes of deciding whether our writ of mandamus may issue to Judge Gregory, that Judge Gregory is a judge of a county court in this court of appeals district and not the judge of a court outside this court of appeals district. Hence, we conclude that in the present case Judge Gregory is subject to the writ of mandamus power vested in this Court pursuant to section 22.221(b) of the Texas Government Code. It follows, therefore, that both Judge Bedard and Judge Gregory are proper subjects of this Court's writ of mandamus in the present case.

That inquiry decided, we return to the question of which judge—Judge Bedard or Judge Gregory—shall be ordered to sign an order of dismissal. In this connection, we conclude that we need not address the merits of the grounds of any challenges to the assignment of Judge Gregory to sit as the judge of the Probate Court No. 3 of Dallas County, Texas. Instead, for the purposes of this opinion, we

assume, but do not decide, that Judge Gregory *is* allowed by law to sit as the judge of the Probate Court No. 3 of Dallas County, Texas, and that objections to Judge Gregory's assignment are without merit. On the other hand, for the purposes of this opinion, we also assume, but do not decide, that Judge Gregory *is not* allowed by law to sit as the judge of the Probate Court No. 3 of Dallas County, Texas, and that objections to Judge Gregory's assignment have merit. Under the first assumption, Judge Gregory would be the proper judicial officer of the State of Texas to sign an order of dismissal. Under the second assumption, Judge Bedard would be the proper judicial officer of the State of Texas to sign an order of dismissal. Both Judge Bedard and Judge Gregory are parties to this proceeding. Consequently, we shall command that Judge Bedard and Judge Gregory each sign an order of dismissal for want of jurisdiction and cause that order to be entered in the minutes of the Probate Court No. 3 of Dallas County, Texas. Thus, we do not reach the merits of the grounds of any challenges to the assignment of Judge Gregory as a visiting judge of the Probate Court No. 3 of Dallas County, Texas. We are confident that both Judge Bedard and Judge Gregory will comply with our directive, and a writ of mandamus will issue against either judge only if he fails to do so.

## VII

### *Conclusion*

The petition for writ of mandamus of relators Qwest Microwave, Inc., and Qwest Microwave II, Inc., is conditionally granted only to the extent that Judge Bedard and Judge Gregory are each directed to sign, and cause to be entered in the court minutes, an order dismissing the administrators' cause as to Qwest Microwave, Inc., Qwest Microwave II, Inc., and General Electric Credit Corporation, in cause number 83–2091–P3(I), styled *R. Clay Underwood, et al., v. Qwest Microwave, Inc., et al.,* pending in the Probate Court No. 3 of Dallas County, Texas, for want of subject-

matter jurisdiction as to them. In all other respects, relators' petition for writ of mandamus is denied.